1  TROY A. VALDEZ, State Bar No. 191478
   ERIN M. DOYLE, State Bar No. 233113
2  VALDEZ NOOR TODD & DOYLE LLP
   116 New Montgomery Street, Suite 210
3  San Francisco, CA  94105
   Telephone:   (415) 202-5950
4  Facsimile:    (415) 202-5951
   Email: tvaldez@vsnlaw.com
5  Email: edoyle@vsnlaw.com

6
7  Attorneys for Plaintiff
   Qpid.me, Inc.

8         THE UNITED STATES DISTRICT COURT FOR THE
9                  SOUTHERN DISTRICT OF CALIFORNIA

10
11 QPID.ME, INC.,                    )   Case No.:   **'13CV0583 IEG   NLS**
                                     )
12         Plaintiff,                )   **PLAINTIFF'S COMPLAINT**
                                     )
13     v.                            )   **1. Declaratory and Injunctive Relief;**
                                     )   **2. Misappropriation of Trade Secrets;**
14 JOHN SCHROM, an individual, and DOES 1 ) **3. Unjust Enrichment;**
   through 10, inclusive,            )   **4. Breach of Contract;**
15                                   )   **5. Breach of the Covenant of Good Faith**
           Defendants.                )      **and Fair Dealing;**
16                                   )   **6. Fraud; and**
                                     )   **7. Tortious Interference with Contractual**
17                                   )      **Relationships.**
                                     )
18                                   )
                                     )
19                                   )
                                     )
20 ─────────────────────────────────────
                                         **DEMAND FOR JURY TRIAL**
21
22
23
24
25
26
27
28
                                COMPLAINT

## I. PARTIES

1. Plaintiff Qpid.me, Inc. alleges:

2. Plaintiff Qpid.me, Inc. ("Qpid.me" or "Plaintiff" or the "Company") is, and at all times mentioned in this complaint was, a corporation organized under the laws of Delaware and doing business in the County of Los Angeles, California.

3. Defendant John Schrom ("Schrom" or "Defendant") is an individual, who, on information and belief, resides in Minneapolis Minnesota, and was employed by Qpid.me in California.

4. Defendants DOES 1 through 10, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to Plaintiff. When their true names and capacities are ascertained, Plaintiff will amend this complaint by inserting their true names and capacities herein. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by such defendants.

## II. JURISDICTION AND VENUE

5. Original jurisdiction exists under 28 U.S.C. § 1332. The dispute is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. The Court has personal jurisdiction over Defendant because he has engaged in business in the State of California. Specifically Defendant sought and obtained employment with Qpid.me in the state of California and his acts and omissions, which give rise to this Complaint, took place in California.

7. Venue as to Defendant is proper in the Southern District of California pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims herein occurred in the judicial district.

## III. GENERAL ALLEGATIONS

8. Qpid.me is a company that provides its users with a safe and secure way to obtain, store and share their confidential health information, including testing results for sexually

transmitted diseases. The Company allows its users to review and share their health information in a secure and safe environment.

9. Schrom is an individual who markets himself as a technologist who is capable of writing source code to create computer software. In or around May 2011, Schrom expressed an interest in joining Qpid.me to help develop the Company's web platform through which it would provide users the platform to access, store, and share their confidential health information in compliance with the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). Schrom represented to Qpid.me that he had the background, experience and skills necessary to create the platform in accordance with the Company's design. Based on Schrom's representations, Qpid.me hired Schrom in May 2011 as its Lead Technologist. Initially, the Company paid Schrom by the hour. However, in January 2012, the Company began paying Schrom $4,000 per month for him to work part-time for the Company and continue to build and develop its platform.

10. As term and condition of his employment, Schrom signed and agreed to abide by the terms of a Confidential Information and Invention Assignment Agreement ("Confidentiality Agreement"). Under the terms of the Confidentiality Agreement, Schrom agreed to hold in strictest confidence, and not use or share with or disclose to anyone else the Company's "confidential information" both during and after his employment with the Company.

11. As stated, Qpid.me specifically engaged Schrom to code and build its platform through which its users could access, store, and share their confidential health information. The Company was working towards a November 26, 2012 launch for a major partner. This launch was an important milestone in the Company's growth and evolution, and all involved with the Company, including Schrom, knew that it was an important event that would be watched by the public and the press.

12. At all times prior to the November 26, 2012 launch, Schrom represented to Qpid.me that he was working on the Company's platform and that it would be completed in time for the launch. Schrom was the Company's lone developer and was the only person with access to the Company's source code, which was maintained in a Git repository and hosted on servers by a

third-party vendor. Maintaining source code in a Git repository is a standard practice at technology companies. One important reason for its ubiquity is that Git displays a time and date stamp for every piece of code committed to a project. This makes it very easy to ascertain when developers are working and when they are not.

13. On November 25, 2012, the night before the scheduled launch, Schrom informed Qpid.me CEO Ramin Bastani ("Bastani") that he had not finished building the Company's platform and that he would need additional time to complete it. Accordingly, Bastani repeatedly requested access to the source code that Schrom had allegedly been working on. Hours after Bastani's final request, Schrom accessed the Company's Git repository and deleted it. While the repository was the Company's property and Schrom had no authority or right to delete it, it is evident that Schrom purposely deleted the repository to hide the fact that he had not been performing the work that Qpid.me was paying him to perform.

14. Qpid.me ultimately recovered the deleted repository and discovered that Schrom had not committed a single line of code in more than 8 out of the 11 months in which it had been paying him to do so, including in the 38 days leading up to the Company's major November 26, 2012 launch. Because of Schrom's failure to perform the services he was hired to perform and which he promised and represented that he was capable of performing, the Company failed to meet its November 26, 2012 launch.

15. Because of the failure to make the November 26, 2012 launch, the Company lost a large opportunity with a major partner and suffered a public relations setback that cost it time, money, potential investors and other opportunities. These losses were all due to Schrom's failure to perform the job that he was hired to perform, and which he repeatedly represented to Bastani that he was performing.

16. Given Schrom's failed promises and failure to deliver upon the work the Company was paying him to perform, Qpid.me decided it would terminate Schrom's employment. Because Schrom had already intentionally deleted Company property, however, Qpid.me was concerned that Schrom would retaliate in a similar fashion if he had access to the Company's source code at

the time of his termination. Accordingly, in the days leading up to Schrom's planned termination, the Company began moving its source code to new servers that would be inaccessible by Schrom.

17.    Unfortunately, Qpid.me's fears were not unwarranted. On December 15, 2012, Schrom noticed that Qpid.me moved its source code to new servers. Understanding that his employment with the Company would soon be terminated, John retaliated by intentionally breaking the Company's platform. In an act of ill will, Schrom deactivated certain of the Company's "API keys" which made it impossible to complete tasks essential to the platform's core functionality, and prevented the Company and its users from accessing certain data. Though Qpid.me was able to repair its platform, the setback cost it time, money, lost users, potential investors and other opportunities. These losses were all due to Schrom's malicious intent to retaliate against Qpid.me for the inevitable termination of his employment.

18.    Qpid.me formally terminated Schrom's employment on December 17, 2012. Prior to his termination, Schrom had intentionally deleted Company property, maliciously broken its platform, and had performed little or no work on behalf of Qpid.me for the entirety of December 2012.

19.    Both prior to and following his termination, Qpid.me discovered that Schrom's tampering with Company property and failure to perform work were not his only malfeasances. Qpid.me also discovered that Schrom, via his personal blog, had shared and was sharing confidential Qpid.me information, including the Company's business plans and strategies without permission and in violation of his Confidentiality Agreement and the law.  As a result of Schrom's wrongful actions, the Company's proprietary and confidential information has been publicly exposed.  The Company is informed and believes that competitors have been provided with an unfair business advantage by Schrom's sharing of Qpid.me's confidential information.

20.    Following his termination, Schrom, despite his illegal and tortious actions and despite the fact that he had done little or no work, much less the work that the he was hired to perform on behalf of Qpid.me, contacted Qpid.me and demanded that he be paid for his final two week's of employment. Qpid.me denies that Schrom performed any work on behalf of the

1  Company for more than 38 days before the November 2012 launch, and for almost the entirety of
2  the month of December 2012 and or that he is entitled to any further money from the Company.

## IV. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**(Declaratory and Injunctive Relief)**

21. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 20 of this Complaint as though set forth fully herein.

22. An employment agreement existed between Plaintiff and Defendant under which Defendant promised to perform certain duties in exchange for a salary of $4,000 per month.

23. Qpid.me terminated Schrom when it discovered that he was tampering with Company property, divulging Company trade secrets and not performing any work on its behalf, much less the work which he was hired to perform.

24. Qpid.me contends that Schrom did not perform any work on its behalf and therefore, he is not entitled to any further payment of salary from the Company. Furthermore, Schrom did not perform any work during more than 8 out of the 11 months that he was employed by Qpid.me, and therefore, never earned the salary and compensation that the Company previously paid him. Schrom contends that he is owed further salary from Qpid.me. Therefore, an actual dispute exists between Plaintiff and Defendant concerning the terms of the employment agreement between them.

25. Plaintiff is now entitled to a declaration of rights so that the parties will know their rights, duties, and obligations with respect to the Employment Agreement. Plaintiff requests a judicial determination and declaration that it does not owe Schrom any further salary under the Employment Agreement as he did not perform any work on the Company's behalf in the 38 days leading up to the November 2012 launch and for almost the entirety of December 2012. Furthermore, Qpid.me seeks a judicial determination that Schrom should repay it for salary and compensation previously paid to him, as he did not perform any work on Qpid.me's behalf in more than 8 out of 11 months during which he was employed.

## SECOND CAUSE OF ACTION

**(Misappropriation of Trade Secrets in Violation of Uniform Trade Secrets Act)**

26. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 25 of this Complaint as though set forth fully herein.

27. Qpid.me's business involves the creation of a platform through which its users can access, store and share confidential health information in a HIPAA compliant environment. Qpid.me's business plan and strategies for how it accomplishes this task are confidential and proprietary trade secrets that it takes great efforts to protect from disclosure.

28. Defendant Schrom, as a result of his employment, gained access to Qpid.me's confidential, proprietary information, and trade secrets.

29. Qpid.me has invested substantial sums of money in the development and creation of business strategies and plans. Qpid.me disclosed these plans and strategies to Schrom in order to secure his help in further developing them. At all times, Schrom agreed to protect all confidential information and trade secrets, which Qpid.me disclosed to him during the course of his employment.

30. Qpid.me's trade secrets had either actual or potential economic value to Qpid.me in that possession and use of these various trade secrets allowed Qpid.me to more effectively compete for business in a field that to date has yet to be fully developed, particularly in a manner that is both secure and compliant with HIPAA. Qpid.me also derived economic benefit from its proprietary information regarding its users, and the confidence they placed in Qpid.me by using the Qpid.me platform to access, store and share their confidential medical information.

31. Beginning on or about August 2012, Defendant Schrom, through his personal public blog, disclosed Qpid.me's business plans and strategies to the public in violation of the contractual obligations he owed to Qpid.me, and the law.

32. Qpid.me is informed and believes that Schrom has used Qpid.me's trade secrets to his advantage and to Qpid.me's disadvantage by trying to usurp Qpid.me's business plans and strategies for his own personal financial gain and to gain a competitive advantage. Because Defendant Schrom did not have any cost of development of Qpid.me's trade secrets, he is able to

use the benefits of those trade secrets to more efficiently compete with Qpid.me.

33. As a proximate result of the misappropriation of Qpid.me's trade secrets, and the use of those trade secrets to Schrom's advantage, Qpid.me has suffered actual damages. As a further proximate result of the misappropriation, Defendant Schrom has been unjustly enriched by his use of Qpid.me's trade secrets.

34. Qpid.me is informed and believes and thereon alleges that the aforementioned acts of all defendants were malicious and willful in that Schrom acted to transfer Qpid.me's trade secrets to his own possession while at the same time, restricting Qpid.me's access to it's own property.

35. Schrom's wrongful conduct in misappropriating the trade secrets from Qpid.me, unless and until enjoined and restrained by order of this court, will cause great and irreparable injury to Qpid.me's business in that Qpid.me has already lost users, customers, partnerships, potential investors and other opportunities. Plaintiff Qpid.me has been forced to expend significant effort and money in an attempt to retain users, customers, partners, and to defend the proprietary system, which it spent years and significant sums of money to build.

36. Plaintiff Qpid.me has no adequate remedy at law for the injuries currently being suffered in that user accounts, once lost, are substantially unlikely to be returned, and if not enjoined, Defendant Schrom will continue to misappropriate the trade secrets and Plaintiff Qpid.me will be required to bring a multiplicity of actions to protect its interests.

37. Unless and until Schrom's intentional and continuing violations of Qpid.me's rights are restrained, Qpid.me will suffer irreparable harm.

38. Furthermore, unless Schrom is ordered to return to Qpid.me any and all Trade Secret Information in his possession, custody and control and to refrain from using or assisting any third party in using the Trade Secret Information, Qpid.me's reputation, goodwill, and ability to compete in the marketplace will be severely and irreparably damaged or destroyed, and Qpid.me will suffer substantial and potentially irreparable damage to its business.

39. WHEREFORE, Plaintiff prays for relief as set forth below.

## THIRD CAUSE OF ACTION

### (Unjust Enrichment)

40. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 39 of this Complaint as though set forth fully herein.

41. By engaging in the acts described above, Defendant Schrom has and continues to benefit from his wrongdoing, and has been unjustly enriched by reaping the benefits of his unlawful activities to the damage and irreparable harm of Plaintiff.

42. The circumstances are such that it would be inequitable for Schrom to retain the benefits from the actions described herein without repaying them, particularly the wage amounts paid to Schrom by Plaintiff despite the fact that he was not performing the services Plaintiff was paying him for.

43. As a result, Plaintiff has been damaged in amounts according to proof.

44. WHEREFORE Plaintiff prays for relief as set forth below.

## FOURTH CAUSE OF ACTION

### (Breach of Contract)

45. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 44 of this Complaint as though set forth fully herein.

46. Schrom was employed pursuant to a written term employment agreement. Under this agreement, Plaintiff promised Defendant a salary, and other benefits of employment in exchange for Schrom promising to perform specific duties for Qpid.me. In addition, Schrom promised to protect, not disclose and not use Qpid.me's confidential and proprietary information. Schrom accepted this agreement both in writing and through his conduct by accepting a salary from Qpid.me.

47. Qpid.me performed all of the conditions, covenants, and promises required on its part by the agreement in paying salary to Schrom, or any nonperformance of the terms and conditions of the agreement are excused because Defendant either consented, directed or agreed with Plaintiff's actions, or prevented Plaintiff from performing such terms and conditions.

48. Schrom has breached the agreement by tampering with Company property and failing to perform the duties that Plaintiff paid him to perform. In addition, Schrom disclosed and used Qpid.me's confidential information in violation of his Confidentiality Agreement.

49. As a result of Defendant's breach of the agreement, Plaintiff has been damaged in an amount according to proof that exceeds the jurisdictional limits of the District Court.

## FIFTH CAUSE OF ACTION

**(Breach Of The Covenant Of Good Faith And Fair Dealing)**

50. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 49 of this Complaint as though set forth fully herein.

51. In California, every contract contains a covenant of good faith and fair dealing, pursuant to which the parties agree to deal honestly, fairly, and in good faith with each other.

52. Defendant breached the covenant of good faith and fair dealing when he failed to perform the duties, which he was being paid to perform, and accepted the salary Qpid.me paid to him. Furthermore, Defendant breached the covenant of good faith and fair dealing when he deleted the Company's Git repository, intentionally broke the Company's platform, and when he used and disclosed Qpid.me's confidential and proprietary trade secrets. Schrom took his actions in bad faith with the intent to avoid his obligations under the Agreement.

53. As a direct and proximate result of Defendant Schrom's conduct, Plaintiff has been damaged in an amount according to proof that exceeds the jurisdictional limits of the District Court.

## SIXTH CAUSE OF ACTION

**(Fraud)**

54. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 53 of this Complaint as though set forth fully herein.

55. Defendant Schrom made the knowingly false statements concerning his ability and commitment to performing the work, which Qpid.me hired him to perform. This included his promise to complete the coding work necessary to build the software platform necessary to

-9-
COMPLAINT

make the November 26, 2012 launch a success. In addition, Schrom promised that he would abide by and uphold the Confidentiality Agreement.

56. Qpid.me reasonably relied upon Defendant's knowingly false statements and had no reason to believe that Schrom would not honor his promises. As a direct result, Plaintiff employed Schrom, paid him as promised and provided him with access to Qpid.me trade secrets and proprietary and confidential information.

57. In or about November 2012, Qpid.me discovered that Schrom had not been living up to the promises he made to Qpid.me and upon which Qpid.me had relied in hiring him. Specifically, Schrom had not been performing the work, which he was hired to perform and it appeared that he never had any intention of doing so. In addition, despite his promises to the contrary, Schrom was using and disclosing Qpid.me confidential information and trade secrets for purposes other than performing his work for Qpid.me, despite his promises that he would not do so.

58. As a proximate result of Defendant's fraudulent actions against Plaintiff, as alleged above, Plaintiff has been harmed in that it has lost the salary it paid to Schrom and not received what it paid for, has lost opportunities with partners and potential investors due to the failed November launch and has also suffered other direct and incidental damages due to Schrom's use and disclosure of Qpid.me's trade secrets and confidential information.

59. The above-recited actions of Defendant in making the false promises and statements to Plaintiff to induce its reliance to offer employment with Qpid.me and provide him with access to its confidential and proprietary information demonstrates that Defendant had no intent to honor the promises made and that his actions were done with malice, fraud, oppression, and in reckless disregard of the rights of Plaintiff. Plaintiff is therefore entitled to recover an award of punitive and exemplary damages in an amount according to proof.

## SEVENTH CAUSE OF ACTION

**(Tortious Interference with Contractual Relationships)**

60. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 59 of this Complaint as though set forth fully herein.

61. Defendant Schrom did tortuously interfere with Qpid.me's contractual relationships with its users and partners by breaking its website and restricting access by Qpid.me and its users to information that belonged to each of them, and by publicly disclosing Qpid.me's confidential, proprietary and trade secret information, specifically to Qpid.me's competitors.

62. These acts by Schrom have caused irreparable damage to Qpid.me in the form of loss of goodwill, loss of technology and technical knowledge, and loss of relationships with users and partners, as well as potential investors, in an amount in damages to be proven at trial.

63. Each of these acts were done willfully and maliciously by Defendant Schrom with the deliberate intent to injure Qpid.me, its business, and its contractual relationships, thereby entitled Qpid.me to exemplary damages and/or attorneys' fees to be proven at trial.

## VI. PRAYER FOR RELIEF

Wherefore, Plaintiff prays for relief and judgment against Defendant, each of them, as follows:

(a) For a declaration by the Court that: (1) Qpid.me does not owe Defendant any further monies for salary or any other benefits of employment; and (2) that Schrom should repay the salaries that he received for all time periods where he was not performing the work that he was being paid to perform;

(b) For a preliminary and permanent injunction restraining and enjoining Schrom from using, disclosing or accessing Qpid.me's Trade Secrets and confidential and proprietary information as alleged herein above and proven to the Court at the time of trial;

(c) For all actual, consequential, and incidental losses and damages, according to proof;

(d) For liquidated damages and punitive damages;

(e) For all statutory damages and penalties;

(f) For an award of interest, including prejudgment interest, at the prevailing legal rate;

(g) For reasonable attorneys' fees pursuant under applicable statutes and doctrines;

    (h)    For costs of suit incurred herein; and

    (i)    For such other and further relief as the Court may deem to be just and proper.

## VII.  JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues triable by a jury.

Dated: March 13, 2013        VALDEZ NOOR TODD & DOYLE LLP

*/s/ Troy A. Valdez*
TROY A. VALDEZ

Attorneys for Plaintiff
QPID.ME, INC.

-12-
COMPLAINT