1 GRELLAS SHAH LLP
   DHAIVAT H. SHAH, ESQ. (SBN 196382)
2 (ds@grellas.com)
   20400 Stevens Creek Blvd, Suite 280
3 Cupertino, CA 95014
   Telephone: (408) 255 - 6310
4 Facsimile: (408) 255 - 6350

5 Attorneys for Defendant
   JOHN SCHROM

6

7

8              THE UNITED STATES DISTRICT COURT FOR THE

9                 SOUTHERN DISTRICT OF CALIFORNIA

10 QPID.ME, INC.,                    Case No.: 13CV0583 IEG NLS

11             Plaintiff,            MEMORANDUM OF POINTS AND
                                     AUTHORITIES IN SUPPORT OF
12        v.                         SPECIAL MOTION TO STRIKE
                                     PURSUANT TO CALIFORNIA CODE
13 JOHN SCHROM, an individual, and   OF CIVIL PROCEDURE SECTION
   DOES 1 through 10, inclusive,     425.16 AND MOTION TO DISMISS
14
             Defendants.            Date:       July 8, 2013
15                                   Time:       10:30 a.m.
                                     Courtroom:  4D
16                                   Judge:      Hon. Irma E. Gonzalez

17

18

19

20

21

22

23

24

25

26

27

28

Grellas Shah LLP
20400 Stevens Creek Blvd, Suite 280
Cupertino, CA 95014

MOTION TO STRIKE AND DISMISS        Case No.: 13CV0583 IEG NLS

# **TABLE OF CONTENTS**

Page

I.   INTRODUCTION ................................................................. 1

II.   SUMMARY OF ALLEGATIONS ........................................... 3

III.   SPECIAL MOTION TO STRIKE UNDER
CALIFORNIA CODE OF CIVIL PROCEDURE §425.16 ................... 6

   A.   Schrom's Blog Post Was A Public
Posting On A Matter of Public Interest ............................. 8

   B.   Qpid.me Cannot Satisfy Its
Burden Of Making An Evidentiary
Showing That Its Claims Have Merit ............................... 13

   C.   Section 425.16 Mandates Dismissal
Of Every Count In The Complaint ................................... 18

IV.   MOTION TO DISMISS UNDER RULE 12(b)(6) ..................... 19

   A.   The First Count, For Declaratory
Relief, Fails To State A Claim ......................................... 19

   B.   The Second Count, For Misappropriation
Of Trade Secrets, Fails To State A Claim ........................ 19

   C.   The Third Count, For Unjust
Enrichment, Fails To State A Claim ................................ 20

   D.   The Fourth Count, For Breach Of
Contract, Fails To State A Claim .................................... 20

   E.   The Fifth Count, For Breach Of
Covenant Of Good Faith And Fair
Dealing, Fails To State A Claim ...................................... 21

   F.   The Sixth Count, For Fraud, Fails To State A Claim ....... 22

   G.   The Seventh Count, For Tortious
Interference With Contractual
Relationships, Fails To State A Claim ............................. 24

V.   CONCLUSION ................................................................. 25

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ............................................................................. 19

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) ..................................................................... 19, 22

*Blue v. Johnson*
No. C 07-05370 SI, 2008 U.S. Dist. LEXIS 119957
(N.D. Cal. Apr. 7, 2008) ....................................................................... 9

*Custom Led, LLC v. Ebay*, Inc.
No. C 12-00350 SI, 2012 U.S. Dist. LEXIS 72721
(N.D. Cal. May 24, 2012) ........................................................ 19, 20, 24

*Garner v. RSM&A Foreclosures Servs., LLC*
No. 12-CV-2666-JAM-AC, 2013 U.S. Dist. LEXIS 37263
(E.D. Cal. Mar. 15, 2013) ................................................................... 20

*Gross v. Symantec Corp.*
No. C 12-00154 CRB, 2012 U.S. Dist. LEXIS 107356
(N.D. Cal. July 31, 2012) .............................................................. 22, 23

*Hilton v. Hallmark Cards*
599 F.3d 894 (9th Cir. 2010) ............................................................ 7, 10

*Orchard Supply Hardware LLC v. Home Depot USA*, Inc.
No. 12-cv-06361-JST, 2013 U.S. Dist. LEXIS 53214
(N.D. Cal. Apr. 12, 2013) ................................................................... 24

*Pellerin v. Honeywell Int'l, Inc.*
877 F. Supp. 2d 983 (S.D. Cal. 2012) ............................................. 19, 21

*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*
133 Cal. App. 4th 658 (2005) .............................................................. 18

*Sedgwick Claims Management Servs., Inc. v. Delsman, Jr.*
No. C 09-1468 SBA, 2009 U.S. Dist. LEXIS 61825
(N.D. Cal. July 17, 2009) ................................................................... 13

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

ii

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD., SUITE 280
CUPERTINO, CA 95014

*Stoneville USA, Inc. v. Pental Granite & Marble, Inc.*
  No. 2:12-cv-4962-ODW(JCGx), 2012 U.S. Dist. LEXIS 133521
  (C.D. Cal. Sept. 18, 2012) ............................................................... 20, 21

*Summit Bank v. Rogers*
  206 Cal. App. 4th 669 (2012) ................................................................ 10

*Thomas v. Fry's Elecs., Inc.*
  400 F.3d 1206 (9th Cir. 2005) ................................................................ 6

## STATUTES

California Civil Code
  § 3426.1(d)(1)-(2) .................................................................................. 14

California Code of Civil Procedure
  § 425.16 ............................................................................................ passim

## FEDERAL RULES AND REGULATIONS

Federal Rules of Civil Procedure
  § 9(b) .................................................................................................. 22, 23
  § 12(b)(6) ........................................................................ 1, 2, 19, 25

Federal Register
  § 77 (Sept. 4, 2012) ................................................................ 10, 11, 17

45 Code of Federal Regulations
  § 164.520(a) ........................................................................................ 14

42 United States Code
  §§ 300jj, et seq. ................................................................................ 2, 10

MOTION TO STRIKE AND DISMISS          Case No.: 13CV0583 IEG NLS

# I.    INTRODUCTION

Plaintiff Qpid.me ("Qpid.me") filed the instant action accusing defendant John Schrom ("Schrom") of publicizing alleged Qpid.me "trade secrets."  These "trade secrets" are anything but secret – they consist entirely of information previously and extensively advertised by Qpid.me and ideas that were and are a central part of public discussions over the availability and effectiveness of electronic health records.

Qpid.me's Complaint should be dismissed on two independent grounds: 1) under California's Anti-SLAPP statute (Cal. Code Civ. Proc. § 425.16) ("Section 425.16"); and 2) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

First, under Section 425.16, the Complaint must be dismissed because the acts alleged were taken "in furtherance of the defendant's right of petition or free speech" and because Qpid.me cannot satisfy its burden of demonstrating that its claims have sufficient evidentiary support to withstand an Anti-SLAPP motion.

Schrom allegedly disclosed trade secrets in a public blog entry entitled "Hacking HIPAA."  The article describes Schrom's recent personal experience with an emergency room that was unable to access and transfer medical records when his father had a medical emergency.  The article also addresses the larger implications for the health care system and quality of care without patient access to interoperable and portable electronic health records.  Then it suggests a solution – the creation of a web-based service to allow patients to access and transmit electronic health records, relying on the federal "Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

The concept of an Internet service to allow patients to electronically access health records and transmit them to third party health care providers, as explained in "Hacking HIPAA," was and is an important public health issue that has had the attention of federal regulators and the healthcare community.  In fact,

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

1

only weeks before posting "Hacking HIPAA," Schrom had been invited to testify before the federal advisory committee recommending rulemaking on this very subject.   And shortly after "Hacking HIPAA" was posted, the Department of Health and Human Services published rulemaking on this subject, including a requirement that covered health care providers "[p]rovide patients the ability to view on-line, download, *and transmit* their health information" electronically. Thus, Schrom's "Hacking HIPAA" posting undisputedly involves an issue of public interest.

Moreover, Qpid.me cannot satisfy its burden of making an evidentiary showing that its claims have a reasonable likelihood of success.   Specifically, Qpid.me cannot demonstrate that the information disclosed by Schrom was a trade secret because it was not at all secret.   The information contained in "Hacking HIPAA" has repeatedly been advertised by Qpid.me in its own blog posts and in media articles.   Moreover, the concept disclosed in Qpid.me would not have been a secret regardless because the procedure had been envisioned already as part of federal rulemaking regarding what is called the "Meaningful Use" mandate with respect to electronic health records under the Health Information Technology For Economical and Clinical Health Act of 2009 ("HITECH") (42 U.S.C. §§ 300jj, *et seq.*).

And even though some of the claims in the Complaint are based on both protected and unprotected activity under Section 425.16, all claims should be dismissed under Section 425.16 in their entirety, with prejudice.   In each claim based upon both protected and unprotected activity, the protected activity is more than "merely incidental" to the unprotected activity.   Therefore, under Section 425.16, these "mixed" claims are subject to dismissal.

Second, Schrom also moves to dismiss each and every count in the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.   The First count, for declaratory relief, should be dismissed because it is duplicative of

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

the breach of contract claim and therefore superfluous.  The Second count should be dismissed because the Complaint fails to allege Qpid.me's trade secrets with particularity.  The Third count should be dismissed because unjust enrichment is not a stand-alone claim, particularly where a plaintiff also alleges the existence of a binding and valid contract.  The Fourth count, for breach of contract, should be dismissed because the Complaint fails to allege with specificity the terms of a contract or how those terms were breached.  The Fifth count, for breach of covenant of good faith and fair dealing, should be dismissed because it is based on the same conduct as the breach of contract claim.  The Sixth count should be dismissed because the Complaint does not allege a plausible claim for fraud with the requisite particularity, and because the "economic loss rule" requires dismissal.  And, finally, the Seventh count, for tortious interference with contract, should be dismissed because the Complaint does not allege facts establishing an enforceable contract between Qpid.me and any party, and does not allege a formally cemented economic relationship with such party.

For these reasons, Qpid.me's complaint should be dismissed in its entirety.

## II.    SUMMARY OF ALLEGATIONS

Qpid.me is a startup that provides an online web portal through which users can obtain their testing results for sexually-transmitted diseases, and securely transfer those results to potential sexual partners.  Compl. ¶ 8.  Qpid.me hired Schrom in May 2011 to help develop Qpid.Me's web platform.  At the time of employment, Schrom signed a Confidential Information and Invention Assignment Agreement ("Confidentiality Agreement") that allegedly prohibited Schrom from disclosing unspecified "confidential information" outside of the company.  *Id.* ¶ 10.

In August 2012, Schrom allegedly disclosed "Qpid.me's business plans and strategies to the public" on his personal blog.  *Id.* ¶ 31.  As a result of this posting, Qpid.me's "proprietary and confidential information has been publicly

3

exposed." *Id.* ¶ 19.   The Complaint further alleges, "upon information and belief," that Schrom's blog posting gave Qpid.me's competitors an unfair advantage. *Id.*

Qpid.me was purportedly planning on launching its product on November 26, 2012.   Schrom allegedly represented that he was working on Qpid.me's platform and that it would be ready for the November 26, 2012, launch. *Id.* ¶ 12.

On the evening of November 25, 2012, Schrom allegedly told Qpid.me that he had not finished building Qpid.me's platform and would need additional time. *Id.* ¶ 13. Later that evening, Schrom allegedly accessed Qpid.me's Git source code repository and deleted the source code he had written for Qpid.me. *Id.*

Qpid.me did not launch on November 26 because its product was not ready.   As a result, it allegedly lost a large opportunity with a major partner and suffered a public relations setback that cost Qpid.me unspecified "time, money, potential investors and other opportunities." *Id.* ¶ 15.

Qpid.me subsequently recovered the deleted repository and allegedly discovered that Schrom had not committed a single line of code in more than 8 out of the last 11 months, including in the 38 days prior to the November 26 launch date. *Id.* ¶ 14.

On December 15, 2012, Schrom, allegedly aware that Qpid.me was poised to terminate him, deactivated Qpid.me's Application Programing Interface keys. *Id.* ¶ 17.   This prevented Qpid.me and its users from accessing certain data. *Id.* Qpid.me was later able to repair its platform but this "setback" allegedly caused Qpid.me unspecified "time, money, lost users, potential investors and other opportunities." *Id.*

Qpid.me terminated Schrom's employment on December 17, 2012. *Id.* ¶ 18.   Schrom subsequently demanded that Qpid.me pay Schrom for his final two

/ / /

4

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

weeks of employment.  Qpid.me denies that it owes Schrom any back-wages.  *Id.* ¶ 20.

On March 13, 2013, Qpid.me filed its Complaint against Schrom in this Court.  It contains seven counts.  Each is generally described below.

First Count:  Declaratory and Injunctive Relief

The Complaint alleges that there was an employment contract between Schrom and Qpid.me but that Schrom did not perform any work on Qpid.me's behalf.  Qpid.me seeks a declaration that Qpid.me does not owe Schrom any back wages under the employment agreement and that Qpid.me is entitled to a refund of all wages it previously paid to Schrom.  *Id.* ¶ 25.

Second Count:  Misappropriation of Trade Secrets in Violation of Uniform Trade Secrets Act

The Complaint alleges that Qpid.me's "business plan and strategies" are "confidential and proprietary trade secrets."  *Id.* ¶ 27.  The Complaint further alleges that "[b]eginning on or about August 2012, Defendant Schrom, through his personal blog, disclosed Qpid.me's business plans and strategies to the public in violation of the contractual obligations he owed to Qpid.me, and the law."  *Id.* ¶ 31.

Third Count:  Unjust Enrichment

The Complaint alleges that Schrom was unjustly enriched because he received wages without earning them.  *Id.* ¶42.

Fourth Count:  Breach of Contract

Schrom allegedly breached his employment agreement by "tampering with Company property and failing to perform the duties that Plaintiff paid him to perform."  *Id.* ¶ 48.  The Complaint further alleges that Schrom also breached the employment agreement because he "disclosed and used Qpid.me's confidential information in violation of his Confidentiality Agreement."  *Id.*

///

MOTION TO STRIKE AND DISMISS        Case No.: 13CV0583 IEG NLS

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

Fifth Count:  Breach of the Covenant of Good Faith and Fair Dealing

Schrom allegedly breached the implied covenant of good faith and fair dealing by failing to perform his employment duties, damaging Qpid.me property, and using and disclosing Qpid.me trade secrets.  *Id.* ¶52.

Sixth Count:  Fraud

The Complaint alleges that Schrom made knowingly false statements to Qpid, including a promise to complete Qpid.me's product by November 26, 2012, and a promise "that he would abide by and uphold the Confidentiality Agreement."  *Id.* ¶ 55.

In or around November 2012, Qpid.me allegedly discovered that Schrom had not performed the work Qpid.me had hired him to do and "it appeared he never had any intention of doing so."  *Id.* ¶ 57.   Schrom also purportedly disclosed Qpid.me's confidential information and trade secrets despite his promise not to do so.  *Id.*

Seventh Count:  Tortious Interference with Contractual Relationships

Schrom allegedly interfered with contractual relationships with unidentified Qpid.me "users and partners" by "breaking its website and restricting access by Qpid.me and its users to information that belonged to each of them."  *Id.* ¶ 12.   Schrom also purportedly further interfered with these contractual relationships by disclosing Qpid.me's confidential information and trade secrets.

## III.    SPECIAL MOTION TO STRIKE UNDER CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16

A defendant is entitled to bring a special motion to strike under section 425.16 of the California Code of Civil Procedure ("Section 425.16") in federal court.  *See Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1206 (9th Cir. 2005). The California Legislature has found that "it is in the public interest to encourage continued participation in matters of public significance, and that this

participation should not be chilled through abuse of the judicial process."  Cal. Code Civ. P. § 425.16(a).   "[T]he Anti-SLAPP statute is [therefore] to be construed broadly."  *Hilton v. Hallmark Cards*, 599 F.3d 894, 902 (9th Cir. 2010).

An Anti-SLAPP motion must be evaluated in two stages.   First, a defendant must make a "threshold showing that the act or acts of which the plaintiff complains were taken 'in furtherance of the defendant's right of petition or free speech . . . .'"  *Id.* at 903 (citations, quotation marks, bracketing and ellipses omitted) (quoting Cal. Code Civ. P. §425.16).  Second, if the defendant meets its threshold burden "the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by plaintiff is credited."  *Id.* (internal quotation marks and citation omitted).  The Court should "consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based."  Cal. Code Civ. P. § 425.16(b)(2)

A defendant satisfies its threshold burden by demonstrating that the alleged conduct at issue falls within one of the four specific categories found within sections 425.16(e)(1)-(4) of the California Code of Civil Procedure.  *See Hilton*, 599 F.3d at 903.   The two categories germane to this motion are § 425.16(e)(3)("any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest") and § 425.16(e)(4) ("any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest").

For the reasons stated below, every count in the Complaint is based, either in part or in whole, on Schrom's acts in furtherance of his right of free speech.  Furthermore, Qpid.me will be unable to satisfy its burden of showing that its claims are both legally and factually sufficient.

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

7

### A.    Schrom's Blog Post Was A Public Posting On A Matter Of Public Interest

Each of the counts, in whole or in part, is based on Schrom's public blog postings on his views on public health issues.  Therefore, each of the counts must be dismissed unless Qpid.me satisfies its legal and evidentiary burden.

The Complaint alleges that "[b]eginning on or about August 2012," Schrom "through his personal public blog, disclosed Qpid.me's business plans and strategies to the public . . . ."  Compl. ¶ 31.

Although the Complaint does not identify the blog post at issue, it is apparent that it is referring to an article entitled "Hacking HIPAA."  There are several reasons why this is clear.  "Hacking HIPAA" was the only article posted on Schrom's blog in August 2012.  Declaration of John Schrom ("Schrom Decl.") at ¶ 31.  Moreover, on January 29, 2013, just months before this lawsuit was filed, Qpid.me demanded that Schrom remove "Hacking HIPAA" and promise to never post it again:

> The Company believes you have violated your legal duties under the Agreements by posting 'Hacking HIPAA' . . . on your personal blog (http://john.mn) since August 2, 2012.  Remove it immediately and provide written assurance via email that you have done so and have not and will not post it anywhere else.

Ex. 2.

"Hacking HIPAA" describes how Schrom's father recently required emergency room care.  *See generally* Ex. 1.  It details the difficulties Schrom's family faced, both in reconstructing Schrom's father's medical history for the emergency room physician, who did not have access to any medical records, and in subsequently attempting to transfer the emergency room medical records to the primary care physician.

The article then addresses the risks of continuity of medical care, and Schrom's view that the lack of interoperable and portable medical records was

inexcusable given the federal "Meaningful Use" mandate for electronic health records as well as the requirements of the "Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). The article also describes Schrom's testimony before the Health IT Standards and Policy Committees, which are tasked with making recommendations for rule-making on the Meaningful Use initiatives, and his proposal that electronic health records custodians be required by law to make Application Programming Interfaces available so that applications could be easily developed to allow patients and physicians easy and direct access to electronic health records.

Finally, "Hacking HIPAA" proposes that one means to facilitate direct patient access, control and portability of their medical records, and improve continuity of care, would be to establish a website that serves as a central database for patient medical records. The article explains how a patient could visit the site, and fill out an online authorization form to have the site request the patient's medical records under HIPAA. The article further states that the site would automatically transmit the HIPAA authorization form to the patient's medical records custodians, receive and store any medical records received, and automatically complete a HIPAA complaint on the patient's behalf against any medical records custodians that failed to respond. Finally, the article states that after the website obtained the medical records, the patient could then ask the site to transfer them to the health care provider of his or her choosing. *Id.*

Schrom's posting of articles on a blog, which is publicly available on the Internet, is a "place open to the public or a public forum," within the meaning of section 425.16(e)(3) of the California Code of Civil Procedure. *See Blue v. Johnson,* No. C 07-05370 SI, 2008 U.S. Dist. LEXIS 119957, at *9 (N.D. Cal. Apr. 7, 2008) (holding that blog was a public forum for purposes of the Anti-SLAPP statute).

/ / /

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

The article also addresses issues of "public interest" within the meaning of sections 425.16(e)(3) and 425.16(e)(4).  In *Hilton*, the Ninth Circuit instructs that the term "public interest" must be construed "broadly in light of the statute's stated purpose to encourage participation in matter of public importance or consequence."   599 F.3d at 906.   Public issues include "conduct that could directly affect a large number of people beyond the direct participants . . . or a topic of widespread, public interest."  *Id.* (internal citation and quotation marks omitted); *see, e.g., Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 694 (2012) (holding that Internet message board postings about "the financial stability of our banking system is a legitimate object of constitutionally protected public commentary, discussion, criticism, and opinion").

Rather than discussing a purely private grievance, "Hacking HIPAA" addresses the societal problems associated with lack of interoperable and transferable medical records, patient rights under federal legislation governing medical records, and a technological solution that would help address this problem.

Moreover, Congress has determined that direct online patient access and portability of electronic health records is not only an issue of public interest but a matter of national priority.  The federal "Meaningful Use" mandate originates in the Health Information Technology For Economical and Clinical Health Act of 2009 ("HITECH") (42 U.S.C.S. §§ 300jj, *et. seq.*).  As a general description, the new law recognized adoption and meaningful use of interoperable electronic health records as a critical national goal.  HITECH authorized the Department of Health and Human Services to establish programs to promote health IT, including electronic health records and private and secure health information exchange.  *See* 77 Fed. Reg. 54163, 54163-64 (Sept. 4, 2012).[1]

---

[1] A true and correct copy of the cited section of the Federal Register is attached as Exhibit A to the Request for Judicial Notice, filed concurrently herewith.

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

In fact, shortly before posting "Hacking HIPAA," Schrom testified about "Meaningful Use" before the Health Information Technology Standards Committee, the Federal advisory committee charged under HITECH to make recommendations for Department of Health and Human Services rulemaking regarding standards for the use of electronic health records and health information exchange.  Schrom Decl. ¶ 30; 77 Fed. Reg. at 54165.  And on September 4, 2012, just days after the "Hacking HIPAA" blog posting, the Department of Health and Human Services issued final rules regarding Meaningful Use, based in part on recommendations from the same Health Information Technology Standards Committee before which Schrom testified. 77 Fed. Reg. at 54163.

The September 2012 rulemaking regarding the Meaningful Use mandate requires electronic health records custodians to "[p]rovide patients the ability to view on-line, download, *and transmit* their health information within 4 business days of the information being available to the" health records custodian.  77 Fed. Reg. at 54167 (emphasis added).   The rulemaking specifically envisions electronic health records technology designed "to electronically . . . transmit [a patient's] health information to a 3rd party.  77 Fed. Reg. at 54179.

To accomplish these objectives, the Meaningful Use mandate requires electronic health records custodians to use the "Direct Project," a set of protocols to ensure direct patient access to medical records and control over transmission of those records.  77 Fed. Reg. at 54176; Ex. B[2] ("The Direct Project will help support simple exchange where a sender wants to push health information securely to a receiver. This simple model covers a number of user stories, and in conjunction with other data components may help to satisfy some meaningful use requirements.").  The Direct Project recognizes the role of a Health Information

---

[2] Except where otherwise noted, all references to alphabetic exhibits refer to exhibits to the Request for Judicial Admission, filed concurrently herewith.

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD., SUITE 280
CUPERTINO, CA 95014

MOTION TO STRIKE AND DISMISS        Case No.: 13CV0583 IEG NLS

Services Provider ("HISP"), which would serve as an intermediary to facilitate a patient's request for medical records and to facilitate a secure transfer of those medical records to the caregiver of the patient's choosing.  Ex. C.

Schrom's post in August 2012 reflects the very same issues that were the subject of the public regulatory rulemaking process described above – the use of a service provider to facilitate access to and the ability to transmit to third parties a patient's medical records.  This rulemaking process, regarding the Meaningful Use mandate, was one that Schrom was invited to testify before the relevant Federal advisory committee shortly before the blog post.  And the final rule itself was published days thereafter.

In short, Schrom's article comments on a nationwide health care issue— the current federal Meaningful Use mandate—an issue for which Schrom had been invited to testify as part of the Federal policymaking process.  This is a quintessential "public issue" within the meaning of Section 425.16.

As a final matter, as is set forth above, it is apparent that Qpid.me's claims are directed at "Hacking HIPAA" based on the Complaint's allegation that the blog article was posted in August 2012, and because Qpid.me has specifically demanded removal of "Hacking HIPAA."  Ex. 2.[3]  But in the event that Qpid.me attempts to oppose the motion by arguing that its claims are based on some other blog posting, other than "Hacking HIPAA," each and every blog posting on Schrom's blog is provided to the Court.  There are eleven articles in total, and each of them discusses Schrom's interests and views on health care, mental health and sexual health.  Exs. 1, 8-17.

/ / /

/ / /

/ / /

---

[3] Except where otherwise noted, all numeric exhibit references refer to exhibits to the Declaration of John Schrom, filed concurrently herewith.

MOTION TO STRIKE AND DISMISS          Case No.: 13CV0583 IEG NLS

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

1
2

### B.  Qpid.me Cannot Satisfy Its Burden Of Making An Evidentiary Showing That Its Claims Have Merit

3

Qpid.me cannot satisfy its burden of showing that it has a probability of

4

prevailing on the merits of its claims.  Qpid.me "cannot rely on allegations in the

5

complaint, but must bring forth evidence that would be admissible at trial."

6

*Sedgwick Claims Management Servs., Inc. v. Delsman, Jr.*, No. C 09-1468 SBA,

7

2009 U.S. Dist. LEXIS 61825, at *28 (N.D. Cal. July 17, 2009).

8

Schrom allegedly misappropriated Qpid.me's trade secrets and breached

9

his contractual duties by disclosing "Qpid.me's business plans and strategies to

10

the public" on his blog.  Compl. ¶ 31.  The success of Qpid.me's claims therefore

11

turns on whether Qpid.me can show that the contents of "Hacking HIPAA" were

12

a trade secret or otherwise protected confidential information.

13

"Hacking HIPAA" does not contain anything that could be considered

14

confidential.  Given that the Complaint itself does not specify what it is in the

15

post that is a secret, one can only guess.  But it may be "Hacking HIPAA"'s

16

suggestion that patients are entitled to direct access and control of their medical

17

records under HIPAA, and proposal that a website could give patients online

18

access to their medical records, help patients navigate and invoke their rights

19

under HIPAA by filing HIPAA complaints on their behalf, and facilitate transfer

20

of medical records from one custodian to another:

21
22
23
24
25
26
27
28

> Enter HIPAA.  A patient has the right to receive copies of (most of)
> their medical records in a manner of their choosing.  They can even
> use digital signatures to request their medical records.  So why,
> then, doesn't there exist a single site that manages this process?  It's
> pretty simple:
> 1) A patient goes to a site and selects the name of their provider,
> clinic, or hospital
> 2) A patient fills in identifying information (name, date of birth)
> 3) A patient digitally signs the clinic's HIPAA authorization form
> 4) The site faxes and mails (if necessary) the authorization form to
> the clinic

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

> 5) The clinic responds via fax, mail, or website upload. If the clinic requires payment, the site can facilitate that process.
> 5b) If the clinic doesn't respond, the site automatically completes a HIPAA complaint on behalf of the patient.
> Once the records have been retrieved, the patient can direct the site to forward on documents to any provider they wish. Further, the site digitizes the documents, and makes the data available via API for other web services.

Ex 1.

Where is the protected trade secret here? Is it a trade secret that patients have rights to their medical records under HIPAA and that they can exercise their rights to obtain and transfer their records? Obviously not. Health records custodians are themselves required to disclose patients; HIPAA rights to them. *See* 45 CFR 164.520(a).

Is it a secret that a website could serve as a database for patient information, allowing them online access to that information, making medical records requests for them, and transferring medical records for them? Is it a secret that the website could file HIPAA complaints on behalf of patients to obtain medical records? Again, no.

Just because Qpid.me operates a website and helps patients exercise their legal rights under HIPAA to obtain access and transfer of testing for sexually-transmitted diseases does not mean that the law gives it a protected monopoly on the ability to create websites that give patients online access to their medical records, help patients request or transfer their records or help patients exercise their rights under HIPAA.

It is well-settled that for information to be protected as a "trade secret," it must be information that is "not [] generally known to the public," and that "[i]s the subject of efforts . . . to maintain its secrecy." Cal. Civ. Code § 3426.1(d)(1)-(2).

/ / /

MOTION TO STRIKE AND DISMISS        Case No.: 13CV0583 IEG NLS

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

The information "disclosed" in "Hacking HIPAA" became part of the public domain prior to Schrom's blog post in two ways: 1) Qpid.me has gone out of its way to publicize the relevant details of Qpid.me's "business plan" that might be seen as analogous to information in Hacking HIPAA; and 2) the concept addressed in Hacking HIPAA has been publicly addressed in great detail as part of the Department of Health and Human Services' Meaningful Use rulemaking discussed in Section III.A, above.

First, Qpid.me cannot claim that information is confidential or proprietary, such that it could be deemed a trade secret, when Qpid.me itself has publicly disclosed the operation of its website in greater detail than "Hacking HIPAA." For instance, on June 5, 2012, Qpid.me posted on its own website an article entitled "College Students Want IT and (Some) Campus Health Centers Aren't Letting Them Have It." The article details Qpid.me's methodology of using HIPAA requests:

> Qpid.me empowers patients to get and share their medical records/test results using the Health Insurance Portability and Accountability Act (HIPAA). And it's made crystal clear in the law that a patient has a right to their medical records. . . . During the registration process on our website, users fill out, electronically sign (with a mouse or a finger) and fax a valid HIPAA authorization release form to their health care provider, requesting their records be sent back via fax directly into their Qpid.me account. Qpid.me confirms STD and HIV status once the fax is in users account and enables the user to share their results however they choose.

Ex. 3. *See also*, Ex 4.

The operation of Qpid.me's methodology has also been the subject of many public articles, often with Qpid.me itself as the primary source. For instance, there is an article on the Huffington Post, entitled "Is Sharing STD Results Online The Next Big Thing? Qpid.me Founders Says Yes," that details how Qpid.me uses HIPAA requests to gather user STI/HIV testing results:

> Once users sign up by providing some basic personal information – like their name, age, phone number – Qpid.me creates a records request that gets e-faxed to their doctor. When the results come

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD., SUITE 280
CUPERTINO, CA 95014

back, users are able to share a one-time use link with anyone they want. . . .  The site depends on provisions in the Health Insurance Portability and Accountability Act of 1996 (HIPAA) that require doctors to release medical records to patients within a certain number of days . . . .

Ex. 5.  Likewise, an article on the ABC News website, entitled "At SXSW, New Sex Apps Focus On That Other Type Of Festival Networking" also reveals how Qpid.me uses HIPAA:

The app allows you to put in the information about yourself and where you were recently tested.  Then you sign a HIPAA form, which releases your medical records back to you.  The site then sends a fax to your doctor and when they have sent it back to Qpid.me, you get a notification.

Ex. 6.

It is apparent that rather than concealing how its website makes HIPAA applications, Qpid.me *advertises* it.

In some instances, it has gone even farther than that.  In January 2011, Motherknows, a company that helps parents and schools obtain and transfer children's medical records, asked Qpid.me to share its procedures under HIPAA: "Can you email me any forms involved in this process- from the patient's request to release, to the request from the clinics as well as follow ups with non compliant clinics?"  Ex 7.  Qpid.me responded by sending Motherknows its actual HIPAA compliance facsimile forms, i.e., the forms it sends to health care records custodians on behalf of its customers.  *Id*.  That Qpid.me is willing to send the actual templates and forms it has created for making HIPAA requests strongly undercuts the notion that "Hacking HIPAA," which contains a much lower level of detail, contains any protected information.

Qpid.me cannot claim as a trade secret information that it went out of its way to make publicly available in multiple forums prior to the information's disclosure by Schrom.

/ / /

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD., SUITE 280
CUPERTINO, CA 95014

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD., SUITE 280
CUPERTINO, CA 95014

Second, not only did Qpid.me previously disclose all of the relevant information in "Hacking HIPAA," but the concept was already part of the public rulemaking process by the Department of Health and Human Services with respect to the Meaningful Use mandate, authorized under the federal Health Information Technology for Economic and Clinical Health (HITECH) Act.  As set forth in Section III.A, above, the Federal Stage 2 Meaningful Use mandate requires health providers to give "patients the ability to view on-line, download, *and transmit* their health information."  77 Fed. Reg. at 54167 (emphasis added). It also envisions the access and transmission of health information electronically, and through the use of a third-party service (such as a website like Qpid.me).  77 Fed. Reg. at 54176 & 54179; Ex.B; Ex. C.

In other words, the Federal Stage 2 Meaningful Use rulemaking specifically envisions the creation of intermediary services (i.e. HISPs), of the exact type set forth in "Hacking HIPAA," so that patients can make web-based requests for their medical records, so that such requests can be properly transmitted to medical care providers and those records can be securely sent back to the intermediary, and so that a patient can then have the intermediary transfer the medical records.  The availability of such HISPs as intermediaries is a core part of the Meaningful Use mandate.

The only difference between the HISPs envisioned under the Meaningful Use mandate and the intermediary described in "Hacking HIPAA" is that HISPs would not be following the rulemaking under HIPAA, but rather under the Meaningful Use rulemaking under HITECH (and the guidelines set by the Direct Project).  Otherwise, the methodology between what a HISP does, and what "Hacking HIPAA" proposed or what Qpid.me does in the narrow area of STI/HIV testing records, is indistinguishable.

Given that the information in "Hacking HIPAA" is already in the public domain and that Qpid.me has not even attempted to keep this information secret,

Qpid.me cannot satisfy its burden of showing that it has a reasonable probability of prevailing on the merits.

### C.  Section 425.16 Mandates Dismissal Of Every Count In The Complaint

Each and every count in the Complaint is based, in whole or in part, on Schrom's purported disclosure of Qpid.me confidential information.  Therefore, the Section 425.16 mandates dismissal of each of them.

The Second count, for misappropriation of trade secrets, is based entirely on Schrom's alleged disclosure of Qpid.me's trade secrets on his personal blog. Compl. ¶ 31.  That count must plainly be stricken.

The remaining counts are based on Schrom's blog postings as well as other alleged acts.  It is well-settled that "where a cause of action alleges both protected and unprotected activity, the cause of action will be subject to section 425.16 unless the protected conduct is *merely incidental* to the unprotected conduct."  *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 672 (2005) (quotation marks and citations omitted)(emphasis added).

In each of the remaining counts, the protected activity is more than "merely incidental" to the count.  The First count seeks a declaration that Schrom violated his duties based in part on Schrom's acts of "divulging  Company trade secrets."  Compl. ¶ 23.  The Third count is silent on the actionable conduct but incorporates all prior allegations, which necessarily involve Schrom's alleged blog posting, and claims unjust enrichment.  Compl. ¶ 41.  The Fourth count alleges that Schrom agreed not to disclose confidential information and breached that promise.  Compl. ¶¶ 46, 48.  The Fifth count alleges the same.  Compl. ¶ 52. The Sixth count alleges that Schrom defrauded Qpid.me by, *inter alia*, disclosing Qpid.me's confidential information.  Compl. ¶ 57.  Finally, the Seventh count / / /

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD., SUITE 280
CUPERTINO, CA 95014

alleges that Schrom tortiously interfered with contractual relationships by "publicly disclosing" Qpid.me's confidential information.  Compl. ¶ 61.

Because Schrom's alleged blog posting is a core component of each of the counts, each of the counts must be stricken.

## IV.    MOTION TO DISMISS UNDER RULE 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A.    The First Count, For Declaratory Relief, Fails To State A Claim

The First count is superfluous because the Fourth count, for breach of contract, will resolve the parties' rights under the employment agreement. Therefore, the First count must be dismissed.  *See Custom Led, LLC v. Ebay*, Inc., No. C 12-00350 SI, 2012 U.S. Dist. LEXIS 72721, at *16 (N.D. Cal. May 24, 2012)("The claim for declaratory relief will not accomplish anything in addition to the resolution of plaintiff's breach of contract claim and, therefore, it is not appropriate.").

### B.    The Second Count, For Misappropriation Of Trade Secrets, Fails To State A Claim

The Second count alleges that Schrom disclosed Qpid.me's trade secrets on his personal blog.  To allege a claim for misappropriation of trade secrets, a complaint must allege "the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade . . . and to permit the defendant to ascertain at least the boundaries within which the secret lies."  *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012) (quotation marks and citations omitted).

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD., SUITE 280
CUPERTINO, CA 95014

The Complaint alleges only that Schrom disclosed "business plans and strategies."   Compl. ¶ 31.  This provides no notice of what these trade secrets are, much less provide the particularized pleading required by law.  The motion to dismiss as to this count should therefore be granted.

### C.     The Third Count, For Unjust Enrichment, Fails To State A Claim

The Third count should be dismissed because "unjust enrichment is not a separate cause of action." *Stoneville USA, Inc. v. Pental Granite & Marble, Inc.*, No. 2:12-cv-4962-ODW(JCGx), 2012 U.S. Dist. LEXIS 133521, at *11 (C.D. Cal. Sept. 18, 2012).  Given that unjust enrichment is a claim in quasi-contract, this principle is especially enforced in the federal courts where, as here, the plaintiff purports to allege a "valid and enforceable contract between the parties." *Custom Led*, 2012 U.S. Dist. LEXIS 72721, at *15.

### D.     The Fourth Count, For Breach of Contract, Fails To State A Claim

The Fourth count should be dismissed because the Complaint fails to state a claim for breach of contract.  The Complaint alleges that Schrom had a written employment contract with Qpid.me that obligated Schrom to:  1) "perform specific duties for Qpid.me" and 2) to "not disclose and not use" Qpid.me's confidential information.  Compl. ¶ 46.  This claim fails because the Complaint does not allege with specificity the terms of the contract or its breach.

The Complaint does not attach Schrom's employment agreement or allege its terms with specificity.  This is a fatal problem.  *See Garner v. RSM&A Foreclosures Servs., LLC*, No. 12-CV-2666-JAM-AC, 2013 U.S. Dist. LEXIS 37263, at *8 (E.D. Cal. Mar. 15, 2013) (granting motion to dismiss because "each element must be pled with specificity, including the contract's terms").  What does the employment contract say are Schrom's "specific duties?"  For instance, did Schrom's employment agreement require him to deliver Qpid.me's

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

platform by November 26, 2012, or did it describe his employment duties in more general terms?  What confidential information has Schrom promised not to use or disclose?  The Complaint's failure to answer these questions mandates dismissal.

Moreover, the Complaint also fails to allege with specificity a breach of the employment agreement.  Without any specificity on what Schrom's employment duties were, the Complaint cannot allege how they were breached. The Complaint is also silent on contents of Schrom's blog post or how those contents constituted a breach of Schrom's confidentiality agreement.  *See Pellerin v. Radplugs, Inc.*, 877 F. Supp. 2d 983, 990 (S.D. Cal. 2012) (granting motion to dismiss because complaint did not plead "'what the trade secrets and/or confidential information' are or whether the confidential information falls within the terms of the agreements")

The Fourth count should therefore be dismissed for failure to state a claim for breach of contract.

### E.  The Fifth Count, For Breach of Covenant Of Good Faith And Fair Dealing, Fails To State A Claim

The Fifth count should be dismissed because it purports to allege a claim for breach of the covenant of good faith and fair dealing on the same facts as the Complaint's claim for breach of contract.  "[W]here a plaintiff's allegations of breach of the covenant of good faith rely on the same facts and seek the same damages or relief already claimed in a companion contract cause of action, they can be regarded as superfluous."  *Stoneville*, 2012 U.S. Dist. LEXIS 133521, at *9-10.

Here, the alleged acts that purportedly breached the contract are indistinguishable from the alleged acts that breached the implied covenant. Paragraph 48 alleges that Schrom breached the contract by 1) "tampering with Company property," 2) "failing to perform the duties that Plaintiff paid him to

MOTION TO STRIKE AND DISMISS          Case No.: 13CV0583 IEG NLS

perform," and 3) disclosing Qpid.me's confidential information.  Paragraph 52 alleges that Schrom breached the implied covenant by 1) "fail[ing] to perform the duties, which he was being paid to perform, and accept[ing] the salary Qpid.em paid to him," 2) "delet[ing] the Company's Git repository [and] intentionally br[eaking] the Company's platform" and 3) disclosing Qpid.me's confidential information.  Given that both counts are based on the same conduct, the Fifth Count is superfluous and should be dismissed.

### F.    The Sixth Count, For Fraud, Fails To State A Claim

The Sixth count does not allege sufficient facts to state a "plausible" claim for fraud.  *Bell Atl.*, 550 U.S. at 570.  It also fails to allege the circumstances of the alleged fraud with the requisite particularity.  Finally, the fraud claim is duplicative of the breach of contract claim and therefore must be dismissed under the "economic loss rule."

A plaintiff has a claim for fraud where the defendant 1) made a false or misleading statement; 2) that it knew to be false; 3) with fraudulent intent; 4) upon which plaintiff justifiably relied; 5) to plaintiff's detriment.  *See Gross v. Symantec Corp.*, No. C 12-00154 CRB, 2012 U.S. Dist. LEXIS 107356, at *10 (N.D. Cal. July 31, 2012).

Rule 9(b) requires that the "circumstances constituting fraud" be pled with "particularity."  "A plaintiff must plead with particularity the time and place of the fraud, the statements made and by whom, an explanation of why or how such statements were false or misleading, and the role of each defendant in the alleged fraud."  *Gross*, 2012 U.S. Dist. LEXIS 107356, at *7.

Schrom allegedly misled Qpid me in two ways:  1) he allegedly made false statements regarding his "ability and commitment" to performing his job duties," including his "promise" to build Qpid.me's software platform by the November 26, 2012, launch date; and 2) he allegedly promised that he would comply with the confidentiality provisions in his employment contract.  Compl. ¶¶ 55.

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

22

The Complaint is devoid of any particularized allegations of what specific statements Schrom made, when he made them, and to whom he made them.  It is well-settled that generalized allegations purporting to paraphrase and repackage defendant's statements do not satisfy Rule 9(b).  *See Gross*, 2012 U.S. Dist. LEXIS 107356, at *14-18 (granting motion to dismiss because Rule 9(b) requires that a complaint must directly quote the defendant's actual statements).

Did Schrom, for instance, specifically promise in May 2011, when he was allegedly hired as an hourly employee, Compl. ¶ 9, that he would code the entirety of Qpid.me's platform by a then-agreed launch date of November 26, 2012, *i.e.*, 18 months in the future?  It is implausible, assuming Schrom made such a promise, either that Schrom knew it to be false when made or that Qpid.me justifiably relied on such a promise.

Or did Schrom make other false or misleading statements at various times during the 18 months of his employment before the product launch date?  Without knowing the specific statements and the context in which they were made, it is impossible to assess whether Schrom could have known that his alleged statements were false when made, or whether Qpid.me justifiably relied on them.

The lack of particularity applies not only to Schrom's alleged fraudulent promises of job performance but also his alleged fraudulent promise that he "would abide by and uphold the Confidentiality Agreement."  Compl. ¶ 55.  When was this promise made?  Was it made when Schrom entered into the contract in May 2011, *i.e.*, a form of fraudulent inducement to contract?  It is implausible that in May 2011 Schrom promised to honor his contractual confidentiality obligations with the then-fraudulent intent to post Qpid.me's confidential information on his blog in August 2012, some 15 months in the future.  Or did Schrom make promises sometime during the 15 months prior to his alleged breach?  If so, without the contextual detail required by Rule 9(b), it

is impossible to evaluate how Qpid.me detrimentally relied on those representations given that Schrom was already an employee and therefore already had access to Qpid.me's alleged confidential information.  If there is a plausible fraud claim buried somewhere in this implausible scenario, it is impossible to tell without the particularized allegations required by law.

As a final point, the Sixth count purports to allege fraud based on the same conduct that gave rise to Qpid.me's breach of contract claim and alleges that the fraud caused the same economic loss.  The fraud claim is therefore barred under the "economic loss rule."  *Custom Led*, 2012 U.S. Dist. LEXIS 72721, at *13 (dismissing fraud claim because the complaint did not allege "fact establishing a duty independent of the parties' contractual relationship or harm above and beyond the economic harm it suffered from the alleged breach of contract").

The Sixth count should therefore be dismissed for failure to allege a plausible claim for fraud with the requisite particularity and under the "economic loss rule."

### G.   The Seventh Count, For Tortious Interference With Contractual Relationships, Fails To State A Claim

The Seventh count alleges that Schrom interfered with contractual relationships with Qpid.me's "users and partners."  Compl. ¶ 61.  To plead a viable claim for tortious interference with contractual relations, "a plaintiff must establish an underlying enforceable contract evidencing a formally cemented economic relationship."  *Orchard Supply Hardware LLC v. Home Depot USA, Inc.*, No. 12-cv-06361-JST, 2013 U.S. Dist. LEXIS 53214, at *19-20 (N.D. Cal. Apr. 12, 2013) (citations and quotation marks omitted) (emphasis added).  The Complaint's vague reference to "users and partners," does not allege any facts establishing an enforceable contract between Qpid.me and any party, much less a formally cemented economic relationship.  The motion to dismiss should therefore be granted.

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

24

1

## V.   CONCLUSION

2

For the reasons stated above, Schrom respectfully requests that the Court

3

grant his special motion to strike under Section 425.16 of the California Code of

4

Civil Procedure and dismiss the Complaint in its entirety.   Schrom further

5

requests that the Court grant his motion to dismiss under Rule 12(b)(6) and

6

dismiss each and every count of the Complaint.

7

8

Respectfully submitted,

9

Dated:  May 15, 2013                    GRELLAS SHAH LLP

10

11

By: _____/s/_____

12

Dhaivat H. Shah, Esq.
Attorneys for Defendant

13

JOHN SCHROM

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

MOTION TO STRIKE AND DISMISS          Case No.: 13CV0583 IEG NLS