1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18

| | |
|---|---|
| QPID.ME, INC.,<br><br>                          Plaintiff,<br><br>     v.<br><br><br>JOHN SCHROM,<br><br>                          Defendant. | CASE NO. 13-cv-583-IEG(NLS)<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART DEFENDANT JOHN SCHROM'S MOTION TO DISMISS; AND**<br><br>**(2) DENYING DEFENDANT JOHN SCHROM'S SPECIAL MOTION TO STRIKE**<br><br>**[Doc. No. 9]** |

19
20
21
22
23
24

        On March 13, 2013, Plaintiff Qpid.me, Inc. commenced this diversity action against its former employee Defendant John Schrom, alleging, *inter alia*, misappropriation of trade secrets, breach of contract, and fraud.  Presently before the Court are Mr. Schrom's special motion to strike under California Code of Civil Procedure § 425.16, and motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  Qpid.me opposes both motions.

25
26
27
28

        The Court found this motion suitable for determination on the papers submitted and without oral argument.  See Civ. L.R. 7.1(d.1).  For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Mr. Schrom's motion to dismiss, and **DENIES** Mr. Schrom's special motion to strike.

## BACKGROUND[1]

Qpid.me is a company that "provides its users with a safe and secure way to obtain, store and share their confidential health information [in compliance with the Health Insurance Portability and Accountability Act of 1996 ("HIPAA")], including testing results for sexually transmitted diseases." (Compl. ¶¶ 8–9.)  It also allows its users to review their health information in a "secure and safe environment."  (Id. ¶ 8.)

In May 2011, Mr. Schrom, "who markets himself as a technologist who is capable of writing source code to create computer software," expressed interest in joining Qpid.me to help develop the company's web platform that would provide users with the ability to access, store, and share their confidential health information in a HIPAA compliant environment.  (Compl. ¶ 9.)  In the same month, Qpid.me hired Mr. Schrom as their Lead Technologist based on his representations.  (Id.)  Initially, it paid Mr. Schrom hourly, and then in January 2012, the company began paying him $4,000 per month "for him to work part-time for the Company and continue to build and develop its platform."  (Id.)  As a term and condition of his employment, Qpid.me alleges that Mr. Schrom signed and agreed to abide by the terms of a Confidential Information and Invention Assignment Agreement ("Confidentiality Agreement"), in which Mr. Schrom "agreed to hold in strictest confidence, and not use or share with or disclose to anyone else the Company's 'confidential information' both during and after his employment with the Company."  (Id. ¶ 10.)

Qpid.me engaged Mr. Schrom to code and build its platform with the goal of working towards a November 26, 2012 launch for a "major partner."  (Compl. ¶ 11.)

---

[1] Mr. Schrom requests judicial notice of an entry in the Federal Register and two "Frequently Asked Questions" entries at http://directproject.org.  (Doc. No. 9-3.)  And Qpid.me requests judicial notice of an article titled "How to File a Complaint" found at the U.S. Department of Health & Human Services website and an archived version of the same article found at http://web.archive.org.  (Doc. No. 15-1.)  Because the Court resolves the motions without reference to these documents, the Court **DENIES AS MOOT** the parties' requests for judicial notice.

This launch was an important milestone for the company, and Qpid.me alleges that everyone involved, including Mr. Schrom, knew that it was "an important event that would be watched by the public and the press." (Id.) Qpid.me adds that at all times prior to the launch date, Mr. Schrom represented to the company that he was working on the platform and that it would be completed in time for the launch. (Id. ¶ 12.) As the company's lone developer, Mr. Schrom was the only person with access to Qpid.me's source code, which was maintained in a Git repository and hosted on servers by a third-party vendor.[2] (Id.)

On November 25, 2012, the night before the scheduled launch, Mr. Schrom informed Qpid.me's CEO Ramin Bastani that he did not finish building the company's platform and that he would need additional time to complete it. (Compl. ¶ 13.) In response, Mr. Bastani repeatedly requested access to the source code that Mr. Schrom had supposedly been working on. (Id.) Hours after Mr. Bastani's final request, Mr. Schrom allegedly accessed Qpid.me's Git repository and deleted it. (Id.) Qpid.me alleges that the repository was company property and that Mr. Schrom had no authority or right to delete it, and that "it is evidence that Schrom purposefully deleted the repository to hide the fact that he had not been performing the work that Qpid.me was paying him to perform." (Id.) The deleted repository was ultimately recovered, and it revealed that Mr. Schrom "had not committed a single line of code in more than 8 out of the 11 months in which [Qpid.me] had been paying him to do so, including in the 38 days leading up to the Company's major November 26, 2012 launch." (Id. ¶ 14.) Because of Mr. Schrom's "failure to perform the services he was hired to perform and which he promised and

---

[2] Source code is "essentially the foundational programming instruction that creates the website." (Bastani Decl. ¶ 40.) Qpid.me's source code was retained in a password-protected Git repository, which is an important version-control software that developers use to manage source-code development. (Id.) "It is a historical record of every change made to a code base and contains within it a time and date stamp and notes on what was done for every piece of code committed to a project." (Id.; see also Compl. ¶ 12.) This allows companies such as Qpid.me the ability to "ascertain when developers are working and when they are not." (Bastani Decl. ¶ 40; see also Compl. ¶ 12.) According to Qpid.me, "[m]aintaining source code in a Git repository is a standard practice at technology companies." (Compl. ¶ 12.)

represented that he was capable of performing," Qpid.me failed to meet its

November 26, 2012 launch.  (Id. ¶ 14.)

Thereafter, Qpid.me decided that it would terminate Mr. Schrom.  (Compl. ¶ 16.)  However, convinced that Mr. Schrom had intentionally deleted company property, Qpid.me was "concerned that Schrom would retaliate in a similar fashion if he had access to the Company's source code at the time of his termination."  (Id.)  Consequently, in the days leading up to Mr. Schrom's planned termination, Qpid.me began moving its source code to new servers that would be inaccessible to Mr. Schrom.  (Id.)

On December 15, 2012, Mr. Schrom allegedly noticed that Qpid.me moved its source code to new servers, and "retaliated by breaking the Company's platform."  (Compl. ¶ 17.)  Specifically, Mr. Schrom "deactivated certain . . . 'API keys' which made it impossible to complete tasks essential to the platform's core functionality, and prevented the Company and its users from accessing certain data."  (Id.)  "Though Qpid.me was able to repair its platform, the setback cost it time, money, lost users, potential investors and other opportunities."  (Id.)  Qpid.me also allegedly discovered that Mr. Schrom had "shared and was sharing confidential Qpid.me information, including the Company's business plans and strategies without permission and in violation of his Confidentiality Agreement and the law" through his personal blog, which consequently resulted in the public exposure of the company's proprietary and confidential information.  (Id. ¶ 19.)

On December 17, 2012, Qpid.me formally terminated Mr. Schrom's employment.  (Compl. ¶ 18.)  Following his termination, Mr. Schrom demanded that he be paid for his final two weeks of employment.  (Id. ¶ 20.)

On March 13, 2013, Qpid.me commenced this diversity action, asserting seven causes of action: (1) declaratory and injunctive relief; (2) misappropriation of trade secrets; (3) unjust enrichment; (4) breach of contract; (5) breach of the covenant of good faith and fair dealing; (6) fraud; and (7) tortious interference with

contractual relationships.[3]  Mr. Schrom now concurrently moves to strike under California Code of Civil Procedure § 425.16, and dismiss under Federal Rule of Civil Procedure 12(b)(6).  Qpid.me opposes both motions.

## DISCUSSION

## I.     MOTION TO DISMISS

### A.     Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint.  Fed. R. Civ. P. 12(b)(6); Navarro v. Block, 250 F.3d 729, 731 (9th Cir.2001).  The court must accept all factual allegations pleaded in the complaint as true, and must construe them and draw all reasonable inferences from them in favor of the nonmoving party.  Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir.1996).  To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)) (alteration in original).  A court need

---

[3] Qpid.me states that it is withdrawing its cause of action for tortious interference with contractual relationships.  (Pl.'s Opp'n 7 n.3.)  Accordingly, the Court **DISMISSES** that cause of action, and will not address it below.

not accept "legal conclusions" as true. <u>Iqbal</u>, 556 U.S. at 678. Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the . . . laws in ways that have not been alleged." <u>Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters</u>, 459 U.S. 519, 526 (1983).

Generally, courts may not consider material outside the complaint when ruling on a motion to dismiss. <u>Hal Roach Studios, Inc. v. Richard Feiner & Co.</u>, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, documents specifically identified in the complaint whose authenticity is not questioned by parties may also be considered. <u>Fecht v. Price Co.</u>, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (superceded by statutes on other grounds). Moreover, the court may consider the full text of those documents, even when the complaint quotes only selected portions. <u>Id.</u> It may also consider material properly subject to judicial notice without converting the motion into one for summary judgment. <u>Barron v. Reich</u>, 13 F.3d 1370, 1377 (9th Cir. 1994).

As a general rule, a court freely grants leave to amend a complaint which has been dismissed. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." <u>Schreiber Distrib. Co. v. Serv-Well Furniture Co.</u>, 806 F.2d 1393, 1401 (9th Cir. 1986).

### B. Declaratory Relief

Declaratory relief is not an independent cause of action or theory of recovery, only a remedy. 28 U.S.C. §§ 2201, 2202. But the existence of another adequate remedy does not preclude a declaratory judgment. Fed. R. Civ. P. 57; 28 U.S.C. § 2201. "While the existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate, the availability of other adequate remedies may make declaratory relief inappropriate." <u>Fimbres v. Chapel Mortg.</u>

1   Corp., No. 09-CV-0886, 2009 WL 4163332, at *5 (S.D. Cal. Nov. 20, 2009)

2   (internal quotations and citations omitted).  For example, courts have dismissed

3   companion claims for declaratory relief where the breach-of-contract claims

4   resolved the dispute completely and rendered additional relief inappropriate.  See

5   StreamCast Networks, Inc. v. IBIS LLC, No. CV 05-04239, 2006 WL 5720345, at

6   *4 (C.D. Cal. May 2, 2006) (citing numerous cases).

7         Mr. Schrom argues that Qpid.me's cause of action for declaratory relief is

8   superfluous because the cause of action for breach of contract will " resolve the

9   parties' rights under the employment agreement." (Def.'s Mot. 19:12–19.)  Qpid.me

10  responds that it seeks declaratory relief in two forms: (1) a declaration that Mr.

11  Schrom is not entitled to any salary for the two weeks preceding his termination

12  when Qpid.me did not pay him, and (2) a declaration that Mr. Schrom is not entitled

13  to any salary that Qpid.me did pay. (Pl.'s Opp'n 19:7–17.)  Qpid.me contends that

14  the former is not available as damages under the breach-of-contract cause of action.

15  (Id.)  Mr. Schrom attempts to characterize both causes of action as "directed to

16  liquidated damages over a past employment relationship." (See Def.'s Reply

17  6:8–20.)  But that characterization does not address Qpid.me's argument that the

18  first declaration Mr. Schrom seeks is not available as damages.  (See id.)  Therefore,

19  based on the allegations in the complaint and the parties' briefing, it is not clear that

20  a resolution of the breach-of-contract cause of action would render the need for

21  declaratory relief unnecessary.

22        In his reply brief, Mr. Schrom also argues that declaratory relief operates

23  prospectively and is not intended to redress past wrongs, and here, the liquidated

24  damages that he seeks are directed at a past employment relationship only. (Def.'s

25  Reply 6:17–20.)  He relies exclusively on StreamCast Networks' proposition that

26  "[declaratory relief] operates prospectively and is not intended to redress past

27  wrongs," but the court in that case declined to dismiss the declaratory-relief claim

28  where the contract and declaratory-relief claims sought different forms of relief.

See StreamCast Networks, 2006 WL 5720345, at *4–5.  That is the circumstance here: Qpid.me's causes of action for declaratory relief and breach of contract seek different forms of relief.  Mr. Schrom fails to show otherwise.  Thus, the Court rejects Mr. Schrom's argument.

As the Court discusses below, Qpid.me alleges facts to adequately support its breach-of-contract cause of action.  And asserting a declaratory-relief cause of action based on the same facts is not inappropriate in this circumstance.  See Davis v. Capital Records, LLC, No. 12-cv-1602, 2013 WL 1701746, at *4 (N.D. Cal. April 18, 2013).  Accordingly, the Court **DENIES** Mr. Schrom's motion as to declaratory relief.

## C.    Misappropriation of Trade Secrets

To state a claim for misappropriation of trade secrets under the California Uniform Trade Secrets Act ("UTSA"), a plaintiff must allege that the defendant (1) "disclose[d] or use[d] the trade secret of another without express or implied consent," and (2) "at the time of the disclosure or use, [the defendant] knew or had reason to know that its knowledge of the trade secret was derived from a person who owed a duty to the entity seeking relief to maintain the trade secret's secrecy or limit its use."  Bayer Corp. v. Roche Molecular Sys., Inc., 72 F. Supp. 2d 1111, 1117 (N.D. Cal. 1999) (citing Cal. Civ. Code § 3426.1(b)(2)(B)).  "The plaintiff should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade."  Imax Corp. v. Cinema Technologies, Inc., 152 F.3d 1161, 1164-65 (9th Cir. 1998) (internal quotation marks omitted).  The UTSA defines a trade secret as:

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that: [¶] (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and [¶] (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d).

The parties appear to agree that references to trade secrets in the complaint are alleged as "business plans and strategies."  (Def.'s Mot. 20:1–4; Pl.'s Opp'n 19:28–20:6.)  But the Court also has special insight through Qpid.me's briefing for the anti-SLAPP motion into what it contemplates as its trade secret that was allegedly misappropriated: "The ability to crowdsource non-compliant health care providers by generating HIPAA complaints directly from the website."  (Pl.'s Opp'n 12:2–5.)  Based on that description, the Court cannot conclude that Qpid.me's contemplated trade secret is described with sufficient particularity in the complaint. The contemplated trade secret is not evident from the phrase "business plans and strategies."  Consequently, the Court **GRANTS** Mr. Schrom's motion as to the cause of action for misappropriation of trade secrets.

### D.   Unjust Enrichment

A claim for quasi-contract is synonymous with one for unjust enrichment. Fed. Deposit Ins. Corp. v. Dintino, 167 Cal. App. 4th 333, 346 (2008).  "The theory of unjust enrichment requires one who acquires a benefit which may not justly be retained, to return either the thing or its equivalent to the aggrieved party so as not to be unjustly enriched."  Othworth v. S. Pac. Trans. Co., 166 Cal. App. 3d 452, 460 (1985).  "A person is enriched if he receives a benefit at another's expense.  The term 'benefit' denotes any form of advantage."  Dintino, 167 Cal. App. 4th at 346 (internal citations and quotation marks omitted).  "Even when a person has received a benefit from another, he is required to make restitution only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it."  Id. at 347 (internal citations and quotation marks omitted). However, "California courts appear to be split on whether unjust enrichment can be an independent claim or merely an equitable remedy."  Falk v. Gen. Motors Corp., 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007); see Bernardi v. JPMorgan Chase Bank, N.A., No. 11-cv-4212, 2012 WL 2343679, at *3 (N.D. Cal. June 20, 2012)

(noting that quasi-contract is not an independent cause of action under California law, and thus the claim is subject to dismissal for that reason alone).

Mr. Schrom presents two grounds to support his argument: (1) unjust enrichment is not a "separate cause of action," and (2) Rule 8 does not permit a plaintiff to assert claims for breach of contract and unjust enrichment in the alternative. (Def.'s Mot. 20:7–13; Def.'s Reply 7:14–8:3.) As noted above, California courts appear split on the issue of whether unjust enrichment can be an independent cause of action. Falk, 496 F. Supp. 2d at 1099. However, California courts have held that "a plaintiff may state a claim for unjust enrichment, particularly where their claim seeks restitution where other remedies are inadequate." Id. (citing Ghirardo v. Antonioli, 14 Cal. 4th 39, 50 (1996)). Mr. Schrom fails to show that Qpid.me's unjust-enrichment cause of action does not fall within that aforementioned category. He also fails to show that there will be no occasion for Qpid.me to resort to unjust enrichment. See Falk, 496 F. Supp. at 1099.

With respect to his second argument, Mr. Schrom raises it for the first time in his reply brief. (See Def.'s Mot. 20:5–13.) The Ninth Circuit has stated that the court "need not consider arguments raised for the first time in a reply brief." Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007). Nonetheless, the Court will address the argument, and directs Mr. Schrom to Rule 8(d), which permits a party to assert alternative statements of a claim and pursue inconsistent claims. Fed. R. Civ. P. 8(d)(2)–(3). Mr. Schrom's characterization of Rule 8 is blatantly wrong. Thus, the Court rejects his second argument.

Out of an abundance of caution and in addition to Mr. Schrom's failure to demonstrate that the cause of action should be dismissed, the Court **DENIES** Mr. Schrom's motion as to unjust enrichment.

/ / /

/ / /

13cv583

1

**E.      Breach of Contract**

2       A claim for breach of contract requires that a plaintiff plead: (1) the existence

3  of a contract, (2) a breach of the contract by defendant, (3) performance or excuse of

4  non-performance on behalf of the plaintiff, and (4) damages suffered by the plaintiff

5  as a result of the defendant's breach.  McDonald v. John P. Scripps Newspaper, 210

6  Cal. App. 3d 100, 104 (1989).  "Under the federal rules, a plaintiff may set forth the

7  contract verbatim in the complaint or plead it, as indicated, by exhibit, or plead it

8  according to its legal effect."  Boland, Inc. v. Rolf C. Hagen (USA) Corp., 685 F.

9  Supp. 2d 1094, 1102 (E.D. Cal. 2010).  "California pleading requirements do not

10  apply in federal court."  Id. at 1102 n.7 (citing numerous cases).

11       Mr. Schrom attacks Qpid.me's breach-of-contract cause of action on two

12  grounds: (1) the complaint does not attach the employment agreement, and (2) the

13  complaint fails to allege with specificity a breach of the employment agreement.

14  (Def.'s Mot. 20:22–21:15.)  Mr. Schrom tacitly abandons the former argument in his

15  relief brief after Qpid.me points out that he is applying a California pleading

16  requirement that is not enforced in federal court.

17       The entirety of Mr. Schrom's explanation regarding the latter argument is as

18  follows:

19                    [T]he Complaint also fails to allege with specificity a breach
                     of the employment agreement.  Without any specificity on
20                    what Schrom's employment duties were, the Complaint
                     cannot allege how they were breached.  The Complaint is
21                    also silent on contents of Schrom's blog post or how those
                     contents constituted a breach of Schrom's confidentiality
22                    agreement.

23  (Def.'s Mot. 21:5–13.)  He continues in his reply brief:

24                    The Fourth count [for breach of contract] is deficiently pled
                     because it fails to allege the terms of the employment
25                    contract and fails to plausibly allege a breach . . . .  But the
                     Complaint provides insufficient notice of the legal effect of
26                    the contract or how it was breached.  For example, it alleges
                     that Schrom disclosed confidential information without
27                    identifying the information or what contractual terms
                     restricted the disclosure.

28  (Def.'s Reply 8:5–16.)  Mr. Schrom wholly fails to address the allegations that

Qpid.me identifies in its opposition brief that support its breach-of-contract cause of action, such as the allegation in paragraph 46, which states that

> Schrom was employed pursuant to a written term employment agreement. Under this agreement, Plaintiff promised Defendant a salary, and other benefits of employment in exchange for Schrom promising to perform specific duties for Qpid.me. In addition, Schrom promised to protect, not disclose and not use Qpid.me's confidential and proprietary information. Schrom accepted this agreement both in writing and through his conduct by accepting a salary from Qpid.me.

(Compl. ¶ 46.) In paragraph 48, Qpid.me further alleges that "Schrom has breached the agreement by tampering with Company property and failing to perform the duties that Plaintiff paid him to perform. In addition, Schrom disclosed and used Qpid.me's confidential information in violation of his Confidentiality Agreement." (Id. ¶ 48.) Qpid.me identifies a myriad of allegations in the complaint supporting its cause of action, and Mr. Schrom does not address any of them. (See Pl.'s Opp'n 22:10–16 (citing Compl. ¶¶ 1, 9–11, 13–15, 19, 46, 48).) Though Mr. Schrom is correct in that the complaint does not explicitly identify all of the confidential information disclosed, Qpid.me alleges sufficient factual content to sustain a plausible breach-of-contract cause of action. See Iqbal, 556 U.S. at 678.

Accordingly, the Court **DENIES** Mr. Schrom's motion as to the breach-of-contract cause of action.

**F.   Breach of the Covenant of Good Faith and Fair Dealing**

Every contract also contains an implied covenant of good faith and fair dealing that "neither party will do anything which will injure the right of the other to receive the benefits of the agreement." Kransco v. Am. Empire Surplus Lines Ins. Co., 23 Cal. 4th 390, 400 (2000) (internal quotation marks omitted). Thus, "the implied covenant of good faith and fair dealing protects only the parties' right to receive the benefit of their agreement." Foley v. Interactive Data Corp., 47 Cal. 3d 654, 698 n.39 (1988). "[T]he implied covenant will only be recognized to further the contract's purpose; it will not be read into a contract to prohibit a party from

1   doing that which is expressly permitted by the agreement itself." Wolf v. Walt
2   Disney Pictures & Television, 162 Cal. App. 4th 1107, 1120 (2008).  "A claim for
3   breach of the implied covenant of good faith and fair dealing is not duplicative of a
4   breach of contract claim when a plaintiff alleges that the defendant acted in bad
5   faith to frustrate the benefits of the alleged contract." Davis, 2013 WL 1701746, at
6   *4 (citing Celador Int'l Ltd. v. The Walt Disney Co., 347 F. Supp. 2d 846, 853
7   (C.D. Cal. 2004); Careau & Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal. App. 3d
8   1371, 1395 (1990)).

9        Once again, Mr. Schrom argues that this cause of action is superfluous
10   because it is "indistinguishable" from the breach-of-contract cause of action.
11   (Def.'s Mot. 21:25–22:7; Def.'s Reply 8:18–8.)  To support his argument, Mr.
12   Schrom directs the Court to paragraphs 48 and 52 of the complaint.  The former
13   contains allegations that Mr. Schrom tampered with company property, failed to
14   perform agreed-upon duties, and disclosed and used confidential information; the
15   latter alleges, in addition to the aforementioned allegations, Mr. Schrom "breached
16   the covenant of good faith and fair dealing when he deleted the Company's Git
17   repository, intentionally broke the Company's platform, and when he used and
18   disclosed Qpid.me's confidential and proprietary trade secrets." (Compl. ¶¶ 48, 52.)
19   Qpid.me also alleges that "Schrom took his action in bad faith with the intent to
20   avoid his obligations under the Agreement." (Id. ¶ 52.)  Contrary to his contention,
21   these allegations show that Mr. Schrom acted in bad faith to frustrate the purpose of
22   both agreements. See Davis, 2013 WL 1701746, at *4.  Looking beyond these
23   paragraphs and at the complaint as a whole, Qpid.me alleges facts that present Mr.
24   Schrom as an ineffective employee who sabotaged company property in anticipation
25   of and following his termination.  Consequently, dismissal of Qpid.me's cause of
26   action for breach of the implied covenant of good faith and fair dealing is not
27   appropriate.  As such, the Court **DENIES** Mr. Schrom's motion as to this cause of
28   action.

13cv583

### G.    Fraud

"In alleging fraud[,] . . . a party must state with particularity the circumstances constituting fraud[.]"  Fed. R. Civ. P. 9(b).  A complaint meets this standard if it alleges "the time, place, and specific content of the false representations as well as the parties to the misrepresentations."  <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 764 (9th Cir. 2007) (citing <u>Edwards v. Marin Park, Inc.</u>, 356 F.3d 1058, 1066 (9th Cir. 2004)).  "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged."  <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted).  "A pleading is sufficient under [R]ule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations."  <u>Moore v. Kayport Package Exp., Inc.</u>, 885 F.2d 531, 540 (9th Cir. 1989).

Common-law fraud is subject to the heightened pleading standards of Rule 9(b).  <u>Black & Veatch Corp. v. Modesto Irrigation Dist.</u>, 827 F. Supp. 2d 1130, 1146 (finding that claims for fraud must meet Rule 9(b)'s particularity requirements); <u>Neilson v. Union Bank of Cal., N.A.</u>, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) (finding that claims for fraud misrepresentation must meet Rule 9(b)'s particularity requirements).

Qpid.me directs the Court to paragraph 55 of the complaint to support its argument that it satisfies the Rule 9(b) standard.  (Pl.'s Opp'n 24:17–23.)  The pertinent excerpt of that paragraph alleges that Mr. Schrom "promise[d] to complete the coding work necessary to build the software platform necessary to make the November 26, 2012 launch a success," and that he "promised that he would abide by and uphold the Confidentiality Agreement."  (Compl. ¶ 55.)  Qpid.me does not provide any further legal analysis.  Though the allegation arguably provides the who and the what, Qpid.me fails to show that it satisfies the when, where, and how.  <u>See Vess</u>, 317 F.3d at 1106.  Therefore, the Court finds that Qpid.me fails to meet Rule 9(b)'s heightened pleading standards, and **GRANTS** Mr. Schrom's motion as to the

1  fraud cause of action.

2  **II.    SPECIAL MOTION TO STRIKE**

3      A Strategic Lawsuit Against Public Participation ("SLAPP") is "a meritless

4  suit filed primarily to chill the defendant's exercise of First Amendment rights."

5  Dickens v. Provident Life & Accident Ins. Co., 117 Cal. App. 4th 705, 713 (2004)

6  (internal quotation marks omitted).  Under the California anti-SLAPP provisions, a

7  litigant may move to strike "[a] cause of action against a person arising from any act

8  of that person in furtherance of the person's right of petition or free speech under

9  the United States Constitution or the California Constitution in connection with a

10  public issue . . . unless the court determines that the plaintiff has established that

11  there is a probability that the plaintiff will prevail on the claim."  Cal. Civ. Proc.

12  Code § 425.16(b)(1).  The anti-SLAPP provisions cover "any written or oral

13  statement or writing made in a place open to the public or a public forum in

14  connection with an issue of public interest."  Cal. Civ. Proc. Code § 425.16(e)(3).

15  The statute also encompasses "conduct in furtherance of the exercise of the

16  constitutional right of petition or the constitutional right of free speech in

17  connection with a public issue or an issue of public interest."  Cal. Civ. Proc. Code

18  § 425.16(e)(4).  The anti-SLAPP provisions "shall be construed broadly."  Cal. Civ.

19  Proc. Code § 425.16(a).

20      When ruling on a § 425.16 motion to strike, "a court generally should engage

21  in a two-step process: First, the court decides whether the defendant has made a

22  threshold showing that the challenged cause of action is one arising from protected

23  activity . . . .  If the court finds such a showing has been made, it then determines

24  whether the plaintiff has demonstrated a probability of prevailing on the claim."

25  Taus v. Loftus, 40 Cal. 4th 683, 703 (2007); see also Daniels v. Robbins, 182 Cal.

26  App. 4th 204, 215 (2010).  "Each cause of action that is the subject of a special

27  motion to strike must be analyzed separately."  Paul v. Friedman, 95 Cal. App. 4th

28  853, 866 n.24 (2002).

Mr. Schrom's anti-SLAPP motion exclusively centers on an article that he authored and posted on his personal blog, titled "Hacking HIPAA." The article is divided into three segments. (Schrom Decl. Ex. 1.) The first segment presents a story of when Mr. Schrom's father had to personally go to a health-care facility in order to sign an authorization for medical records prior to scheduling a follow-up appointment. (Id.) Mr. Schrom essentially argues that the HIPAA law is outdated, and that it is "ridiculous" to require anyone to drive to a "hospital to sign a one page form to then have the privilege of scheduling a follow-up appointment after his recent hospitalization." (Id.) The second segment presents a protocol where applications "could easily be developed to help patients have better access and use of their data." (Id.) The protocol would use digital signatures to request medical records, and automate HIPAA complaints on behalf of patients whose health-care providers fail to comply with the patient's request. (Id.) The last segment invites readers to help beta test Mr. Schrom's protocol. (Id.) Mr. Schrom characterizes this entire lawsuit as centering on this blog article.

### A. Protected Activity

The protected activity that is required in order to satisfy the first step of this test is an act in furtherance of a person's right of free speech in connection with a public issue or an issue of public interest. Cal. Civ. Proc. Code § 425.16(e)(3)–(4). Although not defined in the anti-SLAPP statute, a matter of public interest is one that is "something of concern to a substantial number of people." Weinberg v. Feisel, 110 Cal. App. 4th 1122, 1132 (2003) (citing Dun & Bradstreet v. Greenmoss Builders, 472 U.S. 749, 762 (1985)). "[I]t is the principal thrust or gravamen of the plaintiff's cause of action that determines whether the anti-SLAPP statue applies." Martinez v. Metabolic Internat, Inc., 113 Cal. App. 4th 181, 188 (2003). A "mixed cause of action is subject to [the anti-SLAPP statute] if at least one of the underlying acts is protected conduct, unless the allegations of protected conduct are merely incidental to the unprotected activity." Salma v. Capon, 161 Cal. App. 4th 1275,

1287 (2008).

Mr. Schrom explains at great length that the article "Hacking HIPAA," which he authored and posted on his personal blog, is a protected activity because an Internet blog posting is a place that is open to the public or a public forum and the posting addresses a public interest within the meaning of § 425.16(e). (Def.'s Mot. 9:22–27, 10:1–12:14.)  He then summarily concludes that "it is apparent that Qpid.me's claims are directed at 'Hacking HIPAA' based on the Complaint's allegation that the blog article was posted in August 2012, and because Qpid.me has specifically demanded removal of 'Hacking HIPAA.'" (Id. at 12:15–18.)  Focusing more on the second step of the anti-SLAPP analysis, Qpid.me only challenges the proposition that Mr. Schrom engaged in a protected activity as it applies to its causes of action for declaratory relief and unjust enrichment. (Pl.'s Opp'n 8:10–27.) It argues that the blog posting is immaterial to determining liability under the first step of the anti-SLAPP analysis for these two causes of action. (Id.)  The Court agrees with Qpid.me.

In pursuing declaratory relief, Qpid.me alleges that it is "now entitled to a declaration of rights so that the parties will know their rights, duties, and obligations with respect to the Employment Agreement." (Compl. ¶ 25.)  Qpid.me continues that it seeks a "judicial determination and declaration that it does not owe Schrom any further salary under the Employment Agreement as he did not perform any work on the Company's behalf in the 38 days leading up to the November 2012 launch and for almost the entirety of December 2012." (Id.)  Qpid.me also "seeks a judicial determination that Schrom should repay it for salary and compensation previously paid to him, as he did not perform any work on Qpid.me's behalf in more than 8 out of 11 months during which he was employed." (Id.)  Nothing in these allegations remotely suggests that Mr. Schrom's blog post is "one of the predicate acts for the declaratory relief claim." (See Def.'s Reply 1:25–2:3.)

The only allegation that arguably alludes to the blog post is Qpid.me's

allegation that it terminated Mr. Schrom when it "discovered that he was tampering with Company property, *divulging Company trade secrets* and not performing any work on its behalf, much less the work which he was hired to perform." (Compl. ¶ 23 (emphasis added).)  When read in context with the remaining allegations pertaining to the cause of action for declaratory relief, the Court agrees with Qpid.me that the reference to "divulging Company trade secrets" is made in passing. Qpid.me presents its precise reasons for seeking declaratory relief regarding Mr. Schrom's salary in paragraph 25 of the complaint, and divulging of trade secrets is not among those reasons.  Qpid.me's pursuit of declaratory relief is explicitly limited to Mr. Schrom's alleged failure to fulfill his employment obligations related to the November 2012 launch.

With respect to Qpid.me's cause of action for unjust enrichment, though he disputes that the blog post is immaterial, Mr. Schrom insists that the "gravamen of the claim [for unjust enrichment] is essentially the same as Qpid.me's breach of contract and declaratory relief claims[.]" (Def.'s Reply 2:5–6.)  The Court agrees. Just as the cause of action for declaratory relief centers on Mr. Schrom's alleged failure to fulfill his employment obligations related to the November 2012 launch, so does Qpid.me's cause of action for unjust enrichment.

Mr. Schrom fails to meet his burden at this first step of the anti-SLAPP analysis as to Qpid.me's causes of action for declaratory relief and unjust enrichment.  See Taus, 40 Cal. 4th at 703.  Accordingly, the Court **DENIES** Mr. Schrom's special motion to strike as to the two aforementioned causes of action. See Martinez, 113 Cal. App. 4th at 188.  However, because Qpid.me does not contest Mr. Schrom's special motion as to the remaining causes of action at this point, the Court shall proceed to the next step of the anti-SLAPP analysis for those remaining causes of action.  See Taus, 40 Cal. 4th at 703.

**B.      Probability of Prevailing on the Claims**

If the defendant meets his initial burden of showing that the act underlying

1  the plaintiff's causes of action are subject to the anti-SLAPP statute, "the burden

2  then shifts to the plaintiff to demonstrate a reasonable probability of prevailing on

3  the merits of his cause[s] of action." <u>Nesson v. N. Inyo Cnty. Local Hosp. Dist.</u>,

4  204 Cal. App. 4th 65, 77 (2012).  "'Reasonable probability' in the anti-SLAPP

5  statute has a specialized meaning." <u>Mindys Cosmetics, Inc. v. Dakar</u>, 611 F.3d 590,

6  598 (9th Cir. 2010).  The statute requires only a "minimum level of legal sufficiency

7  and triability." <u>Linder v. Thrifty Oil Co.</u>, 23 Cal. 4th 429, 438 n.5 (2000).  To

8  establish "minimal merit," the plaintiff need only "state and substantiate a legally

9  sufficient claim." <u>Jarrow Formulas, Inc. v. LaMarche</u>, 31 Cal. 4th 728, 741 (2003).

10  In other words, "[t]he plaintiff must demonstrate the complaint is both legally

11  sufficient and is supported by a prima facie showing of facts sufficient to sustain a

12  favorable judgment if the evidence submitted by the plaintiff is given credit." <u>Ruiz</u>

13  <u>v. Harbor View Comm. Ass'n</u>, 134 Cal. App. 4th 1456, 1466 (2005) (citation

14  omitted).

15      "In deciding the question of potential merit, the trial court considers the

16  pleadings and evidentiary submissions of both the plaintiff and defendant[.]"

17  <u>Wilson v. Parker, Covert & Chidester</u>, 28 Cal. 4th 811, 821 (2002).  And "though

18  the court does not *weigh* the credibility or comparative strength of competing

19  evidence, it should grant the [anti-SLAPP] motion if, as a matter of law, the

20  defendant's evidence supporting the motion defeats the plaintiff's attempt to

21  establish evidentiary support for the claim[s]." <u>Id.</u> (emphasis in original).

22      Qpid.me challenges Mr. Schrom's special motion at this second step of the

23  anti-SLAPP analysis for its causes of action for misappropriation of trade secrets,

24  breach of contract, breach of the implied covenant of good faith and fair dealing,

25  and fraud.[4]  To carry its burden, Qpid.me relies on its allegations in the complaint,

26

27      [4] The Court dismissed Qpid.me's causes of action for misappropriation of trade secrets and
    fraud above.  Therefore, the Court need not address those causes of action here in Mr. Schrom's
28  special motion to strike.

but also provides a declaration by Mr. Bastani, the Confidentiality Agreement entered into with Mr. Schrom (Bastani Decl. Ex. A), and the Transition Agreement entered into with Mr. Schrom (Bastani Decl. Ex. B), among others.  Though Mr. Schrom mostly relies on allegations in complaint while addressing Qpid.me's probability of prevailing on the merits, he does provide correspondences with Qpid.me (Schrom Decl. Exs. 2, 7, 18) and all nine blog postings that he published on his website (Schrom Decl. Exs. 8–17), among others.  The Court will address whether Qpid.me meets its burden for each of the remaining causes of action below.

### 1.    Breach of Contract

The Court already found above that Qpid.me adequately states a claim for breach of contract under Rule 12.  At least one court has suggested that meeting the Rule 12(b)(6) pleading requirement may satisfy the second step of the anti-SLAPP analysis.  See Rogers v. Home Shopping Network, Inc., 57 F. Supp. 2d 973, 984 (C.D. Cal. 1999) ("[I]t is not clear that there is any substantive difference between the two standards[.]")  Nonetheless, Qpid.me bolsters the Court's conclusion with evidence that includes Mr. Bastani's declaration, the Confidentiality Agreement, and the Transition Agreement.

Mr. Bastani's declaration is particularly helpful because it provides greater detail of the employment expectations Qpid.me placed on Mr. Schrom and his purported employment failures.  The Confidentiality Agreement includes provisions whereby Mr. Schrom agreed to (1) only perform designated duties by Qpid.me and not perform any duties contrary to the instructions of Qpid.me, (2) not "engage in other employment or in any activities detrimental to the best interests of the Company without prior written consent of the Company," (3) not make copies of or disclose any confidential information, and (4) return any company property and documents upon separation.  (Bastani Decl. Ex. A.)  The Transition Agreement required Mr. Schrom to (1) "provide transition services related to the services and projects that [he] worked on for the Company" and "work on certain projects to be

1   mutually agreed upon," (2) honor the terms of the Confidentiality Agreement, (3)

2   not use any of Qpid.me's confidential information except for the benefit of Qpid.me

3   and as necessary to perform his obligations, and (4) not compete with Qpid.me

4   through Epi.md while still employed.  (Bastani Decl. Ex. B.)  In consideration for

5   these commitments, Qpid.me paid Mr. Schrom a monthly salary and paid his health-

6   insurance premiums.  (Id. ¶ 18.)

7        Mr. Schrom allegedly disregarded many of these contractual obligations.  He

8   failed to build the web platform by the targeted November 26, 2012 launch date,

9   making little or no effort to successfully complete the project (Bastani Decl. ¶¶

10  29–49, Exs. C–I).  Mr. Schrom then deleted Qpid.me's Git repository (Bastani

11  Decl. ¶¶ 50–59, Exs. J–K), "broke" the platform by locking Qpid.me out (Bastani

12  Decl. ¶¶ 60–78, Exs. M–R), and deleted and tampered with Qpid.me's email

13  account (Bastani Decl. ¶¶ 79–80).  Qpid.me presents evidence that Mr. Schrom's

14  conduct caused "significant damages," including the salary it had already given Mr.

15  Schrom, additional costs to repair and recover from the damage Mr. Schrom had

16  done, and public disclosure of a purported "proprietary business platform."  (Bastani

17  Decl. ¶¶ 81–97, Ex. S.)  In sum, Qpid.me demonstrates a probability of prevailing

18  on the merits.

19       Mr. Schrom's only pertinent response is that a "plaintiff cannot defeat an

20  Anti-SLAPP motion against a protected activity by relying exclusively on evidence

21  of unprotected activity."[5]  (Def.'s Reply 4:1–3.)  But "[t]he apparently unanimous

22  conclusion of published [California] appellate cases is that where a cause of action

23  alleges both protected and unprotected activity, the cause of action will be subject to

24  section 425.16 unless the protected conduct is 'merely incidental' to the unprotected

25  conduct."  Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP,

26

27

28       [5] Mr. Schrom does not identify any evidence in his reply brief to refute Qpid.me's evidence in
    the second step of the anti-SLAPP analysis.

- 21 -                                                          13cv583

133 Cal. App. 4th 658, 672 (2005) (citing <u>Mann v. Quality Old Time Serv., Inc.</u>, 120 Cal. App. 4th 90, 103 (2004)).  "[I]f the allegations of protected activity are only incidental to a cause of action based essentially on nonprotected activity, the mere mention of the protected activity does not subject the cause of action to an anti-SLAPP motion."  <u>Scott v. Metabolife Int'l, Inc.</u>, 115 Cal. App. 4th 404, 414 (2004).  The "merely incidental" test looks to whether "it is the principal thrust or gravamen of the plaintiff's cause of action[.]"  <u>Peregrine Funding</u>, 133 Cal. App. 4th at 672-73 (quoting <u>Scott</u>, 115 Cal. App. 4th at 414).  Based on the allegations in the complaint and Qpid.me's evidence, the Court concludes that principal thrust of Qpid.me's breach-of-contract cause of action is Mr. Schrom's failure to develop the web platform by the November 2012 launch date and the subsequent conduct damaging Qpid.me's property.  The references to purported protected activity are merely incidental to the breach-of-contract claim.  The Court **DENIES** Mr. Schrom's special motion to strike as to this cause of action.

## 2.     Breach of the Covenant of Good Faith and Fair Dealing

Many of the same allegations and evidence applied to the breach-of-contract cause of action also apply to Qpid.me's cause of action for the breach of the covenant of good faith and fair dealing.  However, particular evidence warrants special attention.  Specifically, evidence that Mr. Schrom went out of his way to "cover his tracks" by deleting the Git repository after long periods of doing little or no work strongly suggests bad faith.  <u>See</u> <u>Davis</u>, 2013 WL 1701746, at *4.  After Mr. Bastani repeatedly contacted Mr. Schrom for access to the Git repository beginning on December 1, 2012, Mr. Schrom finally responded on December 14, 2012 that he would provide "full admin rights" to the Git repository.  (Bastani Decl. ¶¶ 53–57.)  But it turned out that days after Mr. Bastani's first attempt to contact him, Mr. Schrom had already deleted three Git repositories between December 2nd and 4th.  (Bastani Decl. Ex. L.)

In another example of bad-faith conduct, Mr. Schrom locked Qpid.me out of

its platform.  Qpid.me began moving its source code to new servers that Mr. Schrom could not access.  (Bastani Decl. ¶ 60.)  In a December 15, 2012 email to Mr. Bastani, Mr. Schrom stated that he noticed that his Qpid.me password was changed and that "it look[ed] like you're switching servers."  (Bastani Decl. Ex. M.)  Later, Qpid.me discovered that its efforts were for naught because the Access Key IDs used by Qpid.me were created by Mr. Schrom via his personal account, which he subsequently deleted or deactivated.  (Bastani Decl. ¶¶ 60–69.)  That blocked Qpid.me's access to its platform.  (Id.)  By deleting or deactivating the Access Key IDs, Mr. Schrom also blocked Qpid.me's access to all of its users' records and data that were being stored.  (Id. ¶ 70.)

In sum, Qpid.me adequately demonstrates a reasonable probability of prevailing on the merits, and the references to purported protected activity are merely incidental to this cause of action.  Therefore, the Court **DENIES** Mr. Schrom's special motion to strike the cause of action for the breach of the covenant of good faith and fair dealing.

### CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Mr. Schrom's motion to dismiss, and also **DENIES** his special motion to strike.  Specifically, the Court **DISMISSES WITHOUT PREJUDICE** Qpid.me's causes of action for misappropriation of trade secrets and fraud.  If Qpid.me decides to file a Second Amended Complaint, it must do so within **21 days** from the issuance of this order.

**IT IS SO ORDERED.**

**DATED:  September 9, 2013**

**IRMA E. GONZALEZ**
**United States District Judge**