MANATT, PHELPS & PHILLIPS, LLP
ANDREW L. SATENBERG (Bar No. CA 174840)
11355 West Olympic Boulevard
Los Angeles, CA 90064-1614
Telephone: (310) 312-4000
Facsimile: (310) 312-4224

Attorneys for Plaintiff
QPID.ME, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QPID.ME, INC., <br><br> Plaintiff, <br><br> vs. <br><br> JOHN SCHROM, an individual, and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. 13 CV0583 L NLS <br><br> **PLAINTIFF'S FIRST AMENDED COMPLAINT** <br><br> 1. Declaratory and Injunctive Relief; <br> 2. Unjust Enrichment; <br> 3. Breach of Contract; <br> 4. Breach of the Covenant of Good Faith and Fair Dealing; <br> 5. Violation of CA Penal Code § 502(c) <br><br> **DEMAND FOR JURY TRIAL** |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

1

FIRST AMENDED COMPLAINT
CASE NO.: 13CV0583 L NLS

## I. PARTIES

1. Plaintiff Qpid.me, Inc. alleges:

2. Plaintiff Qpid.me, Inc. ("Qpid.me" or "Plaintiff" or the "Company") is, and at all times mentioned in this complaint was, a corporation organized under the laws of Delaware and doing business in the County of Los Angeles, California.

3. Defendant John Schrom ("Schrom" or "Defendant") is an individual, who, on information and belief, resides in Minneapolis, Minnesota, and was employed by Qpid.me in California.

4. Defendants DOES 1 through 10, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to Plaintiff. When their true names and capacities are ascertained, Plaintiff will amend this complaint by inserting their true names and capacities herein. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by such defendants.

## II. JURISDICTION AND VENUE

5. Original jurisdiction exists under 28 U.S.C. § 1332. The dispute is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. The Court has personal jurisdiction over Defendant because he has engaged in business in the State of California. Specifically Defendant sought and obtained employment with Qpid.me in the state of California and his acts and omissions, which give rise to this Complaint, took place in California.

7. Venue as to Defendant is proper in the Southern District of California pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims herein occurred in the judicial district.

## III. GENERAL ALLEGATIONS

8. Qpid.me is a company that provides its users with a safe and secure

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

way to obtain, store and share their confidential health information, including testing results for sexually transmitted diseases. The Company allows its users to review and share their health information in a secure and safe environment.

9. Schrom is an individual who markets himself as a technologist who is capable of writing source code to create computer software. In or around May 2011, Schrom expressed an interest in joining Qpid.me to help develop the Company's web platform through which it would provide users the platform to access, store, and share their confidential health information in compliance with the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). Schrom represented to Qpid.me that he had the background, experience and skills necessary to create the platform in accordance with the Company's design. Based on Schrom's representations, Qpid.me hired Schrom in May 2011 as its Lead Technologist. Initially, the Company paid Schrom by the hour.

10. As a term and condition of his employment, Schrom signed and agreed to abide by the terms of a Confidential Information and Invention Assignment Agreement ("Confidentiality Agreement"). A true and correct copy of the Confidentiality Agreement is attached as Exhibit A.

11. Under the Confidentiality Agreement, among other terms, Schrom agreed to:

- Only perform duties designated by Qpid.me and not perform any duties contrary to the instructions of Qpid.me (Ex. A, ¶ 2);
- Not "engage in other employment or in any activities detrimental to the best interests of the Company without the prior written consent of the Company" (¶ 2);
- Not make copies of any of Qpid.me's Confidential Information (¶ 3(a));
- Not disclose any Confidential Information (¶ 3(a)); and
- Return any Qpid.me property and documents upon separation (¶ 5).

PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

3

FIRST AMENDED COMPLAINT
CASE NO.: 13CV0583 L NLS

12. On or about December 14, 2011, Schrom advised Qpid.me that he could no longer work full-time for Qpid.me, but did not disclose the reason. Qpid.me, however, subsequently found out that Schrom was leaving to pursue his own start-up company, Epi.md. Nevertheless, Schrom advised Qpid.me that he still needed the additional income from Qpid.me, wanted to continue to work for Qpid.me, and promised that his commitments to Epi.md would not conflict or interfere with his ability to continue to work for Qpid.me on a part time basis.

13. Based on Schrom's promises, on or about January 3, 2012, Qpid.me and Schrom entered into a Transition Agreement that governed the terms of Schrom's continuing employment with Qpid.me. A true and correct copy of the Transition Agreement is attached as Exhibit B.

14. The Transition Agreement, among other terms, obligated Schrom to:
- Provide transition services that Schrom worked on for the Company (Ex. B, ¶ 1);
- Work on projects to be mutually agreed upon between Schrom and the Company (¶ 1);
- Not enter into any other agreement or engage in any services that conflict with the Transition Agreement or prevent Schrom from performing required services for the Company (¶ 1); and
- Continue to honor the terms of the Confidentiality Agreement (¶ 4).

15. In consideration for these services, Qpid.me paid Schrom a salary of $4,000 per month, and also paid for Schrom's premiums under Qpid.me's health plan.

16. Pursuant to the Transition Agreement, Schrom agreed to oversee all of Qpid.me's technologies. He specifically agreed to continue to build new features for the existing web platform, fix bugs that occurred on the site, and be responsive to any other requests for Qpid.me's technology needs.

17. In addition, the Company was working toward a November 26, 2012

1   launch for a major partner.  This launch was an important milestone in the
2   Company's growth and evolution, and all involved with the Company, including
3   Schrom, knew that it was an important event that would be watched by the public
4   and the press.

5         18.    The partnership would require significant changes to Qpid.me's web
6   platform including, but not limited to, building a Clinic Locator for the website and
7   building a feature to crowdsource non-compliant health care providers by allowing
8   users to file HIPAA grievances directly from the website.  Pursuant to the
9   Transition Agreement, Schrom agreed to make these required changes to Qpid.me's
10  platform prior to the anticipated partnership launch date.

11        19.    At all times prior to the November 26, 2012 launch, Schrom
12  represented to Qpid.me that he was working on the Company's platform and that it
13  would be completed in time for the launch.  Schrom was the Company's lone
14  developer and was the only person with access to the Company's source code,
15  which was maintained in a Git repository and hosted on servers by a third-party
16  vendor.  Maintaining source code in a Git repository is a standard practice at
17  technology companies.  One important reason for its ubiquity is that Git displays a
18  time and date stamp for every piece of code committed to a project.  This makes it
19  very easy to ascertain when developers are working and when they are not.

20        20.    On November 25, 2012, the night before the scheduled launch, Schrom
21  informed Qpid.me CEO Ramin Bastani ("Bastani") that he had not finished
22  building the Company's platform and that he would need additional time to
23  complete it.  Accordingly, Bastani repeatedly requested access to the source code
24  that Schrom had allegedly been working on.  Hours after Bastani's final request,
25  Schrom accessed the Company's Git repository from his personal email account
26  and deleted several Git repositories belonging to the Company.  While the
27  repositories were the Company's property and Schrom had no authority or right to
28  delete them, it is evident that Schrom purposely deleted the repositories to hide the

fact that he had not been performing the work that Qpid.me was paying him to perform.

21. Qpid.me ultimately recovered one of the deleted repositories, which revealed that Schrom had not been performing the work he was paid to perform. The recovered Git repository specifically revealed that:

- From October 9, 2012 to November 18, 2012, Mr. Schrom did not write any code for Qpid.me;
- Of the 330 days leading up to the November 26, 2012 launch date, Schrom only committed code on 50 of those days; and
- There were lapses of 29 days, 22 days, 19 days and 18 days, where Schrom did not write any code during that period.

22. Because of Schrom's failure to perform the services he was hired to perform and which he promised and represented that he was capable of performing, the Company failed to meet its November 26, 2012 launch.

23. This was a huge setback for Qpid.me. It jeopardized the partnership, ultimately postponing the launch of the partnership six months until May 2013. In anticipation of the partnership launch, Qpid.me also hired and paid for an additional consultant to help with operations, and was forced to incur those expenses notwithstanding that the partnership did not consummate. Qpid.me also obtained errors and omissions ("E&O") insurance at considerable time, effort and expense solely in anticipation of the November 26, 2012 launch. The missed launch date also significantly hampered Qpid.me's ability to raise money from investors. The partnership, among other things, provided Qpid.me with legitimacy and credibility. When Qpid.me failed to meet the launch date, its credibility and legitimacy was damaged. As a result, certain investors backed out, and Qpid.me was unable to raise money from other investors that it anticipated being able to secure as a result of the partnership. Because of this, Qpid.me's founder had to make a significant personal capital contribution to the company simply so that it could remain

operational for the next six months. Specifically, among other expenses incurred as a result of Schrom's wrongful conduct, Qpid.me had to retain a consultant and hire a Chief Technology Officer to rebuild Qpid.me's platform and complete the engineering and development that Schrom was supposed to have completed, but never did. These losses were all due to Schrom's failure to perform the job that he was hired to perform, and which he repeatedly represented to Bastani that he was performing.

24. Given Schrom's failed promises, breaches of his agreements, and failure to deliver upon the work the Company was paying him to perform, Qpid.me decided it would terminate Schrom's employment. Because Schrom had already intentionally deleted Company property, however, Qpid.me was concerned that Schrom would retaliate in a similar fashion if he had access to the Company's source code at the time of his termination. Accordingly, in the days leading up to Schrom's planned termination, the Company began moving its source code to new servers that would be inaccessible by Schrom.

25. Unfortunately, Qpid.me's fears were not unwarranted. On December 15, 2012, Schrom noticed that Qpid.me moved its source code to new servers. Understanding that his employment with the Company would soon be terminated, Schrom retaliated by intentionally breaking the Company's platform. In an act of ill will, Schrom deactivated certain of the Company's Access Key IDs which made it impossible to complete tasks essential to the platform's core functionality, and prevented the Company and its users from accessing certain data.

26. Specifically, Schrom's deactivation of the Access Key Ids effectively put Qpid.me's website out of service. Qpid.me could not create new requests to health care providers, receive faxes from health care providers, view existing requests made by users, view existing faxes (with results) users had received from health care providers, upload new user profile images, or view existing user-uploaded profile images. In addition, by deleting/deactivating the Access Key IDs,

Schrom blocked Qpid.me's access to all of its users' records and data.

27. Though Qpid.me was able to repair its platform, the setback cost it time, money, lost users, potential investors and other opportunities. These losses were all due to Schrom's malicious intent to retaliate against Qpid.me for the inevitable termination of his employment.

28. Schrom's conduct also prevented Qpid.me from being able to access the Qpid.me user data that he hijacked and stored in his personal account until approximately January 26, 2013 – more than one month after Schrom was terminated. To this day, Qpid.me is informed and believes that Schrom continues to maintain certain proprietary information belonging to Qpid.me in his possession, custody and control in violation of his contractual obligations to the Company that he refuses to return.

29. Qpid.me formally terminated Schrom's employment on December 17, 2012. Prior to his termination, Schrom had intentionally deleted Company property, maliciously broken its platform, and had performed no work on behalf of Qpid.me for the entirety of December 2012.

30. Both prior to and following his termination, Qpid.me discovered that Schrom's tampering with Company property and failure to perform work were not his only malfeasances. Qpid.me also discovered that Schrom deleted all incoming emails from his Qpid.me email account prior to May 16, 2012. This was Qpid.me property that Schrom was not authorized to destroy. The emails that remained in his inbox also appeared to be heavily culled. Specifically, Schrom appears to have deleted hundreds of emails and only left certain select messages.

31. Following his termination, Schrom, despite his illegal and tortious actions and despite the fact that he had done no work, much less the work that the he was hired to perform on behalf of Qpid.me, contacted Qpid.me and demanded that he be paid for his final two week's of employment. Qpid.me denies that Schrom performed any work on behalf of the Company for more than 38 days

before the November 2012 launch, and for the entirety of the month of December 2012, and further that he is entitled to any further money from the Company.

## IV.    CAUSES OF ACTION
## FIRST CAUSE OF ACTION
### (Declaratory and Injunctive Relief)

32.    Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 31 of this Complaint as though set forth fully herein.

33.    An employment agreement existed between Plaintiff and Defendant under which Defendant promised to perform certain duties in exchange for a salary of $4,000 per month and other benefits.

34.    Qpid.me terminated Schrom when it discovered that he was tampering with Company property and not performing any work on its behalf, much less the work which he was hired to perform, among other reasons.

35.    Qpid.me contends that Schrom did not perform any work on its behalf and therefore, he is not entitled to any further payment of salary from the Company. Furthermore, Schrom did not perform any work during more than 8 out of the 11 months that he was employed by Qpid.me, and therefore, never earned the salary and compensation that the Company previously paid him.  Schrom contends that he is owed further salary from Qpid.me.  Therefore, an actual dispute exists between Plaintiff and Defendant concerning the terms of the employment agreement between them.

36.    Plaintiff is now entitled to a declaration of rights so that the parties will know their rights, duties, and obligations with respect to the Transition Agreement. Plaintiff requests a judicial determination and declaration that it does not owe Schrom any further salary under the Transition Agreement as he did not perform any work on the Company's behalf in the 38 days leading up to the November 2012 launch and for the entirety of December 2012.  Furthermore, Qpid.me seeks a judicial determination that Schrom should repay it for salary, compensation and

1 benefits previously paid to him, as he did not perform any work on Qpid.me's
2 behalf in more than 8 out of 11 months during which he was employed.

## SECOND CAUSE OF ACTION

### (Unjust Enrichment)

37. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 36 of this Complaint as though set forth fully herein.

38. By engaging in the acts described above, Defendant Schrom has and continues to benefit from his wrongdoing, and has been unjustly enriched by reaping the benefits of his unlawful activities to the damage and irreparable harm of Plaintiff.

39. The circumstances are such that it would be inequitable for Schrom to retain the benefits from the actions described herein without repaying them, particularly the wage amounts paid to Schrom by Plaintiff despite the fact that he was not performing the services Plaintiff was paying him for.

40. As a result, Plaintiff has been damaged in amounts according to proof.

41. WHEREFORE Plaintiff prays for relief as set forth below.

## THIRD CAUSE OF ACTION

### (Breach of Contract)

42. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 41 of this Complaint as though set forth fully herein.

43. Schrom was employed pursuant to the Transition Agreement and Confidentiality Agreement. Under these agreements, Plaintiff promised Defendant a salary and other benefits of employment in exchange for Schrom promising to perform specific duties for Qpid.me. In addition, Schrom promised to not make copies of any of Qpid.me's Confidential Information, not disclose any Confidential Information, and to return any Qpid.me property and documents upon separation.

44. Schrom accepted these agreements both in writing and through his conduct by accepting a salary from Qpid.me.

45. Qpid.me performed all of the conditions, covenants, and promises required on its part by the agreements in paying Schrom's salary and additional benefits. Any nonperformance of the terms and conditions of the agreement are excused because Defendant either consented, directed or agreed with Plaintiff's actions, or prevented Plaintiff from performing such terms and conditions.

46. Schrom has breached the agreement through the conduct alleged herein including, but not limited to, tampering with and destroying Company property, failing to return Company property, and failing to perform the duties that Plaintiff paid him to perform.

47. As a result of Defendant's breach of the agreement, Plaintiff has been damaged in an amount according to proof that exceeds the jurisdictional limits of the District Court.

## FOURTH CAUSE OF ACTION

**(Breach Of The Covenant Of Good Faith And Fair Dealing)**

48. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 47 of this Complaint as though set forth fully herein.

49. In California, every contract contains a covenant of good faith and fair dealing, pursuant to which the parties agree to deal honestly, fairly, and in good faith with each other.

50. Defendant breached the covenant of good faith and fair dealing through the conduct alleged herein including, but not limited to, when he: (1) failed to perform the duties that he was being paid to perform and accepted the salary and benefits Qpid.me paid to him, (2) deleted the Company's Git repository, (3) intentionally broke the Company's platform, (4) hijacked and failed to return Qpid.me's confidential user data, and (5) deleted hundreds of Qpid.me emails. Schrom took his actions in bad faith with the intent to avoid his obligations under the Transition Agreement and Confidentiality Agreement and with the purpose of frustrating the benefits of such agreements.

51. As a direct and proximate result of Defendant Schrom's conduct, Plaintiff has been damaged in an amount according to proof that exceeds the jurisdictional limits of the District Court.

## FIFTH CAUSE OF ACTION

### (Violation of California Penal Code § 502(c))

52. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 51 of this Complaint as though set forth fully herein.

53. By engaging in the misconduct and other such wrongful acts as alleged above, specifically, deleting Qpid.me's Git repositories, destroying its web platform by deleting/deactivating the Access Key IDs, deleting Company emails from his Qpid.me email account, and hijacking and retaining Qpid.me's confidential user data in violation of his agreements, Defendant:

- Knowingly accessed and without permission, altered, damaged, deleted, destroyed, took, copied, and/or otherwise made use of Qpid.me's data, computer, computer system or computer network to deceive Qpid.me and wrongfully obtain Qpid.me's property;
- Knowingly and without permission disrupted and caused the disruption of Qpid.me's computer services; and
- Knowingly and without permission denied and caused the denial of Qpid.me's access to its computer services.

54. By engaging in the misconduct and other such wrongful acts as described above, Defendant violated Penal Code Section 502(c), subdivisions (1) through (5) and (7).

55. As a result of Defendant's wrongful conduct, Plaintiff has suffered and continues to suffer economic loss, and other general and specific damages, including, but not limited to, damage to business reputation, expenditures reasonably and necessarily incurred to verify the extent and scope of Schrom's misconduct, lost profits, lost revenue and lost business opportunities, among other

1  damages, all in an amount to be determined according to proof at the time of trial.

2      56.    Defendant's wrongful acts were committed maliciously, oppressively,
3  and with intent to defraud, deceive and permanently deprive Plaintiff of its
4  property.  Plaintiff is entitled to punitive and exemplary damages in an amount to
5  be ascertained according to proof at the time of trial, which is appropriate to punish
6  and set an example of Defendant.

7      57.    Plaintiff thus hereby brings this private cause of action against
8  Defendant for violation of California Penal Code Section 502(c) as permitted by
9  California Penal Code Section 502(e)(1) and applicable case law.

10      58.    WHEREFORE, Plaintiff prays for relief as set forth below.

## V. **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for relief and judgment against Defendant, each of them, as follows:

(a) For a declaration by the Court that: (1) Qpid.me does not owe Defendant any further monies for salary or any other benefits of employment; and (2) that Schrom should repay the salaries that he received for all time periods where he was not performing the work that he was being paid to perform;

(b) For a preliminary and permanent injunction requiring Schrom to return all of Qpid.me's confidential and proprietary information that he has wrongfully retained;

(c) For all actual, consequential, and incidental losses and damages, according to proof;

(d) For liquidated damages and punitive damages;

(e) For all statutory damages and penalties;

(f) For an award of interest, including prejudgment interest, at the prevailing legal rate;

(g) For reasonable attorneys' fees under applicable statutes and doctrines;

(h) For costs of suit incurred herein; and

(i) For such other and further relief as the Court may deem to be just and proper.

## VI. JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues triable by a jury.

Dated: December 30, 2013          MANATT, PHELPS & PHILLIPS, LLP

By: /s/ Andrew L. Satenberg
Andrew L. Satenberg
*Attorneys for Plaintiff*
QPID.ME, INC.

311210030.2